UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| Gertrude A. Seigel,<br><br>        Plaintiff,<br><br>   v.<br><br>Trails Carolina, LLC, Wilderness Training &<br>Consulting, LLC, and Derry C. O'Kane,<br><br><br>        Defendants. | **COMPLAINT**<br>(Jury Trial Demanded) |

Plaintiff ("Gertie") complaining of the Defendants above named, alleges and will show unto this Honorable Court as follows:

## INTRODUCTION

1. This Complaint is based on the sexual abuse that Gertie was made to suffer as a 12-year-old child because of the negligent, reckless, wanton, and tortious acts and omissions of Trails Carolina, LLC, acting by and through its owner and manager Wilderness Training & Consulting, LLC ("**WTC**"), and its other officers, directors, managers, employees and agents (collectively "**Trails Carolina**") and Derry C. O'Kane ("**O'Kane**") Plaintiff's primary therapist while she was a "student" at Trails Carolina program in Transylvania County, North Carolina.

2. Trails Carolina is a for-profit program ran by WTC, which is part of an organization of for-profit affiliated businesses that does business as Family Help & Wellness. Family Help & Wellness is based in Salem, Oregon, and it operates various "troubled teen" programs in North Carolina, Idaho, Utah, and Arizona. Family Help & Wellness describes its operations at Trails Carolina as a "clinically sophisticated and time-tested program [that] engages students through wilderness therapy, mindfulness and yoga, equine-assisted therapy, intentional transitions from wilderness expeditions to base camps, and academic engagement."[1]

---

[1] https://famhelp.com/programs/#outdoor

3.     Trails Carolina boasts that its "wilderness program is dedicated to helping teens work through behavioral or emotional difficulties, building trusting relationships with their family and peers, and achieve academic success" and that it is "a leading residential treatment center for youth."[2]

4.     Trails Carolina also claims that it has master level therapists, individualized treatment planning, school with accredited academics, and weekly family treatment planning with "experienced staff" who "truly care about the wellbeing of students" and that "therapeutic staff members are trained in their specialized fields and have decades of experience between them."[3]

5.     Trails Carolina reports that it partnered with Create Clinical LLC for a study that shows 98% of "students" continue to report significantly improved mental health 12 months after graduation.[4]

6.     Despite the façade of providing a safe and therapeutic residential treatment center for children, Trails Carolina has failed to screen and assess the children in its legal custody and creates an environment where troubled children have and do sexually assault other children within Trail Carolina's custody and care.  Further, Trails Carolina has failed to provide adequate medical care, food, and shelter for the children in its custody.

7.     Despite referring to its program as an "adventure wilderness program for students ages 10-17," very little to no schooling occurs for participants in its wilderness therapy program.

8.     Despite employing therapists and professionals who know or should know that North Carolina is a universal mandatory reporting state pursuant to N.C.G.S. G.S. 7B-301, Trails Carolina repeatedly fails to report abuse and neglect to authorities and fails to take prompt action

---

[2] https://trailscarolina.com/
[3] https://trailscarolina.com/therapeutic-program/
[4] https://trailscarolina.com/does-wilderness-therapy-work/

to protect the children in its care. Moreover, Trails Carolina utilizes policies and procedures with its employed staff that contradict North Carolina's mandatory reporting law and prevents appropriate regulatory and law enforcement oversight and intervention for the protection of the minors in their custody.

9. Gertie's childhood sexual assault o while she was in the custody of Trails Carolina and under the clinical care of O'Kane was the foreseeable result of the Defendants' negligent, reckless and wanton misconduct and corporate policy of non-compliance with industry standards or North Carolina law. Gertie's sexual assailant, hereinafter referred to as "Jane Doe," had sexually assaulted two (2) other girls prior to assaulting Plaintiff. Defendants knew or should have known about the sexual assaults of the other girls, as Gertie had expressed concern about Jane Doe to more than one member of Trails Carolina's field staff and O'Kane prior to her assault.

10. Trails Carolina never removed Jane Doe from the group. Moreover, O'Kane urged Gertie to befriend Jane Doe and dismissed the complaints by Gertie and others in her cohort of "students" as "drama in the group." Further, Defendants caused Gertie to be placed next to the perpetrator to sleep despite Gertie expressing concerns about Jane Doe that very night.

11. Trails Carolina, by its corporate policies and practices, acts, failures, condonations and omissions, and O'Kane were directly responsible for, and created an environment that enabled Gertie's abuse and neglect, as well as the abuse and neglect of other girls who are too victimized and afraid to allow their voice to be publicly heard.

12. Gertie has suffered severe and life-long injuries from the sexual abuse and neglect she suffered while she was in the legal care of Trails Carolina.

## JURISDICTION AND VENUE

13. Gertie is a citizen and resident of Chittenden County, Vermont.

14. Trails Carolina is a manager-managed limited liability company organized and existing under the laws of the State of North Carolina since June 25, 2008. As described herein, Trails Carolina, LLC, is a citizen of North Carolina, Oregon, Texas, Utah, Idaho, Arizona, and Washington for the purposes of federal diversity jurisdiction.

15. Trails Carolina, LLC claims its sole member and manager is Wilderness Training & Consulting, LLC. WTC is a limited liability corporation organized and existing under the laws of the State of Oregon. As described herein, Wilderness Training & Consulting, LLC, is a citizen of North Carolina, Oregon, Texas, Utah, Idaho, Arizona, and Washington for the purposes of federal diversity jurisdiction.

16. Trails Carolina claims WTCSL, LLC, is the sole member and manager of Wilderness Training & Consulting, LLC. WTCSL, LLC is a limited liability corporation organized and existing under the laws of the State of Oregon.

17. WTCSL, LLC's membership is a diverse number of individuals invested in the wilderness therapy industry in locations where Family Health and Wellness operates its various programs. Specifically, Trails Carolina claims that WTCSL, LLC members are:

    a) WTC Holdco, LLC, whose members, according to Trails Carolina, are:

- FHW/THP Blocker, Inc., a private equity firm formed in and maintaining its principal place of business in Texas;

- PGO, LLC, whose member is Sue Crowell, a citizen of North Carolina;

- Opal Creek Capital, LLC, whose member is Tim Dupell, a citizen of Oregon;

- Wayne Laird, a citizen of Oregon; and

- JLC Family, LLC, whose member is Johnny Deblock, a citizen of Washington;

    b) Graham Shannonhouse, a citizen of North Carolina;

c)   Kathryn Huffman, a citizen of North Carolina;

d)   Cat Jennings, a citizen of North Carolina;

e)   Dilly Bean LLC, whose sole member is Bryan Tomes, a citizen of North Carolina;

f)   John Gordon, a citizen of North Carolina;

g)   Mary S. Pierce, a citizen of North Carolina;

h)   Rebecca Gebb, a citizen of North Carolina;

i)   SEJC Holdings, LLC, whose sole member is Kyle Gillett, a citizen of North Carolina;

j)   FNS Group, LLC, whose sole member is Dan Stuart, a citizen of Utah;

k)   Ikaika Holdings LLC, whose sole member is Keoni Anderson, a citizen of Utah;

l)   Randi Nelson, a citizen of Utah;

m)   Jen Wilde Consulting PLLC, whose sole member is Jennifer Wilde, a citizen of Utah;

n)   Laura Burt, a citizen of Utah;

o)   Mahalo Nui, LLC, who sole member is Judith Jacques, a citizen of Utah;

p)   Scott Hess, a citizen of Utah;

q)   Shayne Gallagher, a citizen of Utah;

r)   Sheri Gallagher, a citizen of Utah;

s)   Jesse Long, a citizen of Oregon;

t)   Hayden Dupell, a citizen of Oregon;

u)   Kirsten Morgan, a citizen of Oregon;

v)   Matt Roy, a citizen of Oregon;

w)   Steven Stradley, a citizen of Oregon;

x) Jon Worbets, a citizen of Idaho;

y) Kathy Rex, a citizen of Idaho;

z) Reid Treadaway, a citizen of Idaho;

aa) Simpson Holdings, L.C., whose two members are Jeff Simpson and Becky Simpson, who are citizens of Arizona; and

bb) White Mountain Consulting LLC, whose sole member is Josh White, a citizen of Arizona.

18.    Upon information and belief, and at all times material hereto, Graham Shannonhouse and Jeremy Whitworth were officers of Trails Carolina, given the titles "founder" and "executive director," respectively. WTC was Trails Carolina, LLC's sole manager,  and Shannonhouse and Whitworth were responsible for the daily operations of Trails Carolina; collectively, WTC, Shannonhouse, and Whitworth were responsible for the hiring, training, and oversight of Trails Carolina's personnel, as well as adopting and enforcing policies and procedures that ensured the well-being of the minors entrusted to Trails Carolina's care.

19.    Upon information and belief, Shannonhouse and Whitworth hired O'Kane, as well as the young adults who served as "field staff" at Trails Carolina, including individuals named Rasheta, Nathan, Ryan, Paul, Liz, Sarah, and Ella. As "students" are not permitted to know the last names of staff or each other, Gertie has no knowledge of the last names of Trails Carolina's "field staff" who interacted with her during her time at Trails. However, Trails Carolina acted through these employees in a manner that resulted in Gertie's unreported abuse and physical neglect during her time at Trails Carolina.

20.    O'Kane is a citizen of Buncombe County, North Carolina and was Gertie's licensed clinical mental heath counselor while Gertie was at Trails Carolina. O'Kane was responsible for

the provision of clinical services to Gertie while she was at Trails Carolina.

21.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists between Gertie and the Defendants, and the amount in controversy in this case exceeds $75,000.00, exclusive of costs and interest.

22.     Venue is proper in the Asheville Division of the United States District Court for the Western District of North Carolina because the most substantial part of the events and omissions giving rise to Gertie's claims occurred in Transylvania County.

23.     Prior to bringing the instant action, Gertie, through her lawyers, has retained an expert witness, and the medical care and all medical records pertaining to the alleged negligence that are available to Gertie after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care.

24.     The undersigned further asserts, in compliance with Rule 9(j) of the North Carolina Rules of Civil Procedure, that this pleading alleges facts establishing negligence under the existing common-law doctrine of *res ipsa loquitur*, because it is within the common knowledge, experience and sense of laymen that Defendants should not have required Gertie to suffer deprivation and physical neglect while she was in their custody, and they should not have required Gertie to suffer additional trauma by continuing to sleep with her sexual assailant even after receiving actual notice of Gertie's report of sexual assault.

<u>**COMMON FACTUAL ALLEGATIONS**</u>

**A.     Trails Carolina's negligent business model fosters abuse upon children and allows them to suffer neglect.**

25.     Trails Carolina is in the business of profiting off of the provision of "wilderness therapy" to "troubled" children ages 10 through 17.

26. Trails Carolina acknowledges children at Trails Carolina have behavioral issues such as manipulative behavior, aggression or anger management, defiant behavior, and mental health disorders, such as depression, anxiety, and mood dysregulation; and self-image issues such as peer pressure, bullying, and low self-esteem.[5]

27. Upon information and belief, some of the children at Trails Carolina have histories of sexual abuse and/or sexual misconduct. However, sexual abuse and/or sexual misconduct are not listed in any of Trails Carolina's marketing materials or its website; this risk, known to Defendants, are intentionally omitted from the marketing and advertising Trails Carolina publishes to the public or the intake materials and disclosures provided to parents, such as Gertie's parents.

25. Upon information and belief, Trails Carolina conceals incidents of physical neglect, child deprivation, injury, and sexual assault and battery between children from the public, including Plaintiff and her family, for the deceptive purpose of lulling parents into a false sense of security when entrusting their children to Trails Carolina's exclusive custody and care.

26. Rather, Trails Carolina attempts to mask events where children in its care are injured behind confidentiality agreements, and it fails to report events to the North Carolina Department of Health and Human Services, Trails Carolina, LLC's licensing regulator, even when faced with reasonable cause to suspect abuse or neglect has occurred in its program.

27. Instead, Trails Carolina boasts, "Your daughter will work with other girls of similar ages who face similar challenges," leading parents to believe the group the child is placed in will have similar mental health or behavioral challenges.

28. Upon information and belief, Trails Carolina, by and through its owners, officers, managers, employees and agents, have known for years that some of the children have sexually

---

[5] https://trailscarolina.com/about-us/wilderness-program/girls-10-13/

assaulted and battered other children at Trial Carolina. Trails Carolina knew or should have known the dangers particular children presented to others, such as Gertie. However, Trails Carolina ignored that danger and permitted children with aggressive sexual urges to exploit other children, like Gerties despite Trails Carolina's actual and constructive knowledge that these events are occurring.

29.     Upon information and belief, Trails Carolina knew or should have known that:

    a.  Putting children with histories of sexual abuse and/or sexual misconduct into yurts or tents where other children were forced to sleep alongside them provides children with aggressive sexual urges with access to vulnerable children in secluded and poorly supervised settings;

    b.  Trails Carolina conditions the children to adhere to the practice of strict obedience of its employees, and encourages an environment of "breaking down" the children, creating an environment of fear and silence, which creates an environment that fails to protect children from those with aggressive sexual urges.

    c.  Trails Carolina promotes the ideas of strict compliance, of not letting the children know each other's or field staff's last names and of not "rocking the boat," and of specifically shaming victims to not tell others what happened and blaming victims for events that occurred, all of which help facilitate a culture that keeps young victims silent and compliant and fosters an environment for sexual assault.

30.     Upon information and belief, Defendants knew or should have known that if they advised parents of past incidents of assault, battery, and sexual misconduct, parents would not trust them with their children's exclusive custody and care, costing Trails Carolina the profit for which it operates.

30.    Defendants fail to disclose to parents how little counseling children in their care receive with a licensed therapist, which is, upon information and belief, an hour or less per week. Instead, Defendants rely field staff, who are only required to be 21 years old and possess a GED, to "carry out" "individualized" therapeutic treatment plans.

**B.    Trails Carolina was negligent, reckless and wanton in permitting Gertie's sexual abuse and physical neglect.**

31.    On or about May 5th, 2016, Gertie was only 12 years of age when she was "gooned" from her home in Vermont; a man and a woman who she didn't know took her by force and brought her to Trails Carolina in Transylvania County, North Carolina.

32.    Gertie was a child under the custody and legal care of Trails Carolina from on or about May 6, 2016 until July 27, 2016.

33.    After a week of Gertie being at Trials Carolina, Victim #1 was sexually assaulted by Jane Doe. Victim #1 disclosed the sexual assault to her cohort of girls and Trails Carolina's field staff.

34.    Trails Carolina's field staff did not remove Jane Doe from Gertie's cohort, but instead took away all of the children's tent "privileges" and made them all sleep in a line under a tarp instead.

35.    Around Gertie's second week at Trails Carolina, Victim #1 was again sexually assaulted by Jane Doe. Gertie and another child - who was later victimized by Jane Doe - disclosed the sexual assault to Trails Carolina's field staff, who were not the same staff as the previous week; these members of Trails Carolina's field staff disclosed Victim #1's sexual assault to O'Kane. They did not report it to Trails Carolina's regulators or law enforcement, as Trails Carolina has a policy that requires its employees to instead report sexual assault to either t

36.    Although Jane Doe was temporarily placed in a "burrito,"[6] she remained with Gertie's cohort of girls.

37.    Thereafter, Plaintiff wrote her parents a letter, attempting to describe Victim #1's assault.

38.    Trails Carolina's field staff and therapists read all outgoing and incoming mail exchanged between children and parents.

39.    Gertie's parents reached out to O'Kane who responded, "I will definitely stay on top of the lying in the group. I'm pretty sure I know who [Gertie] is talking about AND I'm certain that student's story is an embellishment. I appreciate the information and will definitely watch for anything transpiring in the group culture as a result."

40.    O'Kane also wrote to Gertie's parents "I have no legitimate concerns about any of [Gertie's] reports." O'Kane did not report the sexual abuse of Victim #1 to the regulatory authorities or law enforcement, much less students' parents.

41.    During Gertie's session with O'Kane, Gertie relayed Jane Doe made her nervous and discussed Victim #1's assault. O'Kane stated that Gertie was "mature" enough to be a bigger person and urged her to befriend Jane Doe. O'Kane "challenged" Gertie to "do this for her."

42.    Jane Doe began to fixate on Gertie, disclosing to her that she had been raped and describing in detail to her what an erect penis looked like. Jane Doe began giving Gertie sharp objects, hoping that Gertie and Jane Doe could self-harm together. Jane Doe attempted to self-harm herself in front of Gertie and was again placed temporarily in the "burrito."

43.    Several weeks after the assault on Victim #1, Jane Doe sexually assaulted Victim

---

[6] When Trails Carolina "burritos" a "student", that "student" sleeps on top of one end of the tarp, and the rest of the tarp is wrapped over the "student" and then placed under an adjacent staff's sleeping setup, causing the student to be bound throughout the night while the field staff sleeps.

#2. She disclosed the assault to Gertie and expressed the concern that Gertie would be next. This was said in the presence of Trails Carolina's field staff, who again, did not remove Jane Doe from the cohort. O'Kane was also informed, and no one reported the sexual assault to the regulatory authorities or law enforcement, much less the student's parents.

44.     Approximately one week later, Jane Doe asked Gertie to run away. Gertie disclosed to this to field staff and again stated Jane Doe was fixated on her, causing her to fear for her safety. Despite Gertie disclosing her worries to field staff, that very night she was placed to sleep next to Jane Doe in a Yurt.

45.     That night, on or about Gertie's 37th day at Trails, Jane Doe raped Gertie. Jane Doe probed Gertie with her fingers and performed oral sex on Gertie without Gertie's consent.

46.     The next day, Gertie first disclosed the sexual assault to O'KaneO'Kane did not disclose the sexual assault to the authorities. Rather, she made Gertie promise not to tell anyone else about the assault and told Gertie she was equally at fault.

47.     Because Gertie was forbidden from disclosing the rape to the other girls and field staff, Gertie wrote of her assault in her journal while Victim #2 read over her shoulder. When Victim #2 read of the assault, she started screaming. Field staff discovered Gertie's sexual assault and approached O'Kane.

48.     O'Kane told Gertie that crossing physical boundaries "was not ok" but what Gertie did was worse because she caused additional "drama" by disclosing her sexual assault to others. She then asked Gertie if she ever used the word "no" when she was being sexually assaulted by Jane Doe.

49.     A few days later, Victim #2 was removed from the group for "manipulating people's beliefs," but Jane Doe remained throughout the duration of Gertie's time at Trails.

50.     About six weeks into her time at Trails Carolina, Elizabeth Schall of Create Clinical evaluated Gertie. She made several recommendations for treatment and pointed out that Gertie's eating issues should be monitored; however, Trails Carolina and O'Kane failed to monitor or otherwise develop a treatment plan that addressed the issues and risk of neglect raised by the evaluation.

51.     While Gertie was at Trails Carolina, the water filters that the group used to drink water from a nearby stream broke. The filters were clogged and black, and the group was forced to filter water through a dirty bandana. It took Trails Carolina about three weeks to replace the filter. At that time, Gertie and other students became sick. Upon information and belief, some students developed pinworms, and despite never seeing a physician, Gertie was required to take medication.

52.     Gertie was forced to hike all day – from taking down camp in the morning until it was time to set up for sleep. For the amount of calories expended due to the hiking, Gertie did not receive enough food.

53.     Gertie was not provided a shower until her tenth day at Trails Carolina, where upon showering, she noticed she had already lost significant weight, which was due to inadequate caloric intake.

54.     Due to the childrens' tent privileges being removed after the sexual assault of Victim #1, Gertie and the children in her cohort were forced to sleep outside in the rain, with her sleeping bag moving around the campsite with her in it, due to the force of the water.

55.     Gertie also suffered symptoms of a Urinary Tract Infection (UTI) for weeks before eventually being given a UTI test by staff. The test became bright purple, and Gertie, despite still not seeing a physician, was given antibiotics. The symptoms persisted after she finished the

antibiotics, but she was not permitted to see a physician.

56. Gertie also had two staph infections on her arm during her time at Trails Carolina and was not taken to a physician for treatment, and was treated by field staff instead. The infections left a scar that is still visible, although faded over the years.

57. Despite the rights guaranteed under North Carolina Code 122C-62, Gertie was repeatedly told she could not call her parents, nor was she provided appropriate structure, supervision and control.

58. As a result of this abuse and neglect, Gertie has been harmed.

## FIRST CAUSE OF ACTION AS TO TRAILS CAROLINA, LLC AND ITS SOLE MANAGING MEMBER, WILDERNESS TRAINING & CONSULTING, LLC
(Negligence/Gross Negligence)

59. All prior paragraphs are incorporated herein.

60. Trails Carolina specifically marketed their services and experience, and invited girls with emotional issues to their therapeutic residential program, including Gertie, who was an invitee.

61. Trails Carolina holds itself out as a leader in wilderness therapy that helps children through connecting with nature and its mission "is to give the child confidence, coping mechanisms, and communication skills that will help them become the best versions of themselves." Because of this expertise, Gertie's parents entrusted Gertie to Trails Carolina.

62. Trails Carolina, LLC's staff and its manager WTC held Trails Carolina out as an expert in working with girls who had mental health disorders, behavioral concerns, developmental conditions, and social challenges.

63. When Trails Carolina took minor children into this program, upon information and belief, parents were required to sign over legal custody of their child to Trails Carolina. Trails

Carolina assumed all duties *in loco parentis* for each and every child invitee, including Gertie.

64.     Trails Carolina, LLC, and its manager, WTC, owed a duty to:

   a.   adequately warn of the risk of child sex abuse in its program prior to taking custody and large sums of money from the children's parents;

   b.   adequately train and supervise those persons acting on its behalf how to guard against, identify, and respond to sexual assault and battery, as well as other forms of physical abuse and neglect;

   c.   to protect its students from sexual assault and battery, as well as other forms of medical, nutritional and physical deprivation and neglect;

   d.   to adequately investigate claims of sexual abuse and other neglect by minor enrollees;

65.     Trails Carolina, LLC's staff and its manager WTC owed a duty to provide a safe environment for the children in its custody for a number of reasons in addition to its duties *in loco parentis*, including without limitations, the following:

   a.   Trails Carolina undertook and administered psychological therapy, youth-development programs, activities, and services to minors, and as a result assumed a duty to Gertie and other children to exercise reasonable care in connection with its therapy programs, activities, services;

   b.   N.C.G.S. §7B-301 places an affirmative duty upon Trails Carolina, and its employees and agents to report sexual abuse to Gertie and other children, and N.C.G.S. §7B-310 removes any privilege that Trail Carolina's counselors could otherwise use to shield the failure to report;

   c.   Trails Carolina had special relationships with the children who were entrusted to their

care and control (including Gertie);

d. Trails Carolina was and is a youth-serving organization obligated to take reasonable steps to respond to and prevent sexual abuse of the children who participate in its programs;

e. Trails Carolina invited Gertie and other children onto property under its ownership or control, including at Winding Gap, Sky Valley, and Shuttleworth; and

66. Trails Carolina, LLC, and WTC breached their duties by, including but not limited to:

a. failing to adopt policies and procedures that required its employees and clinical staff to perform a proper assessments of children admitted to Trails Carolina that identifies disorders and other factors and developing an individualized plan of care for the children admitted to Trails Carolina;

b. failing to assure Gertie was placed into a group setting with children who had similar mental health issues. Upon information and belief, at least two girls in Gertie's cohort were at Trails for trauma related to sexual abuse, including rape;

c. failing to monitor the premises where it held custody over the children and adequately control Jane Doe, a minor invitee, to ensure that she did not do foreseeable harm Gertie, who was also an invitee under North Carolina law;

d. failing to provide sufficiently trained staff to adequately control minor invitees;

e. failing to develop any centralized format to ensure that health and safety self-inspections were being performed by Trails Carolina;

f. failing to systematically review the appropriateness of services and pattens of service utilization at Trails Carolina or adopt policies and procedures that required

this to be done;

g.  failing to provide adequate security for minor children in their custody;

h.  failing to follow statutory mandates and their own policies and procedures relating to investigating and reporting sexual assaults; and

i.  failing to adequately investigate and report the sexual assault of Gertie, leaving her subject to additional emotional distress and injury following her assault.

j.  failed to act as a reasonable persons would to protect the minor Gertie and failed to take even the slightest degree of care and were grossly negligent in their disregard for the well being of Gertie, who was entrusted to their care.

k.  and in such other ways as will be revealed in the course of discovery in this case.

67.  Given Trails Carolina's unique knowledge that some of the children had a history of sexual abuse and/or sexual assault, and the fact that its field staff and O'Kane knew Jane Doe had sexually assaulted at least two other girls, the risk to Gertie and other students was imminently and reasonably foreseeable to Trails Carolina, LLC and its manager, WTC, yet they failed to intervene when they owed a duty to do so to avoid foreseeable harm to Gertie.

68.  It was foreseeable to Trails Carolina, LLC and WTC that leaving Gertie in close proximity to Jane Doe at night, who had been raped prior to attending Trails Carolina and who had sexually assaulted two other girls at Trails Carolina, and of whom Plaintiff had expressed fear of, would result with Gertie being injured.

69.  It was foreseeable to Trails Carolina, LLC and WTC that their inadequate policies and procedures, their lack of appropriate supervision and training of employees, their failure to accurately assess their employee's skills or the effectiveness of the services provided to children, and their failure to systemically address ethics, legal requirements, boundaries, trauma, and

compliance would result in children, such as Gertie suffering inexcusable physical harm and neglect.

70.    Trails Carolina, LLC and its manager, WTC's actions and inactions were the proximate cause of Gertie's injuries, causing her to suffer grievous bodily injury, PTSD, dissociative symptoms, eating disorder, panic attacks triggered by stimuli that reminds her of her experience at Trails Carolina, self-hatred and loathing, emotional pain and suffering.

### SECOND CAUSE OF ACTION AS TO DERRY C. O'KANE
(Negligence/Gross Negligence)

71.    All prior paragraphs are incorporated herein.

72.    O'Kane is a licensed clinical mental health counselor licensed on March 12, 2015 by the North Carolina Board of Licensed Clinical Mental Health Counselor.

73.    O'Kane held herself out as an expert in working with children who were experiencing emotional and behavioral difficulties and is part of the "expertly trained" team employed by Trails Carolina.

74.    North Carolina law 7B-301 requires any person or institution "*who has cause to suspect*" any juvenile is being abused or neglected to make a report to the local department of social services.

75.    Trails Carolina also has a policy that requires O'Kane to report suspected abuse to the department of social services, or to at least gather the necessary data and receive supervision from her clinical and/or program leadership team at Trails Carolina, LLC and its manager, WTC.

76.    At all times relevant to the events related to the Complaint, t O'Kane was Gertie's therapist at Trails Carolina.

77.    In holding herself out as an expert, O'Kane created a false sense of security and safety to Gertie and her parents who relied on her expertise.

78.    O'Kane knew about the sexual assaults of Girl 1 and Girl 2 and did not file a report with the department of social services as required by law.

79.    Rather than protect Gertie from the very real threat to sexual assault, O'Kane told Gertie, who expressed worry and concern about Jane Doe to O'Kane, to get closer to Jane Doe. O'Kane also reassured Gertie's parents who expressed concerned after Gertie wrote a letter to her parents concerned about the sexual assault of Girl 1, that these allegations were "lies" and "drama."

80.    O'Kane was required to use a degree of care and skill which is ordinarily employed by the profession generally, under similar conditions and like surrounding circumstances and protect Gertie from the foreseeable sexual assault she suffered.

81.    O'Kane deviated from the applicable standards of care, breached her duty and was negligent and grossly negligent in failing to report the sexual abuse of Victim #1 and Victim #2 to the NC Department of Social Services, triggering a law enforcement investigation. O'Kane failed to exercise even the slightest degree of care to protect Gertie from Jane Doe. Further, O'Kane used her power of authority to try to make Gertie believe she was somehow at fault for the sexual assault, furthering Gertie's damages.

82.    O'Kane also deviated from the standard of care in failing to implement any particular therapy or treatment relating to any diagnoses or recommendations that stemmed from the evaluation performed by Dr. Elizabeth Schall of Create Clinical.

83.    O'Kane's breaches of the standard of care were proximate cause of Gertie's injuries, causing her to suffer grievous bodily injury, PTSD, dissociative symptoms, eating disorder, panic attacks triggered by stimuli that reminds her of her experience at Trails Carolina, self-hatred and loathing, emotional pain and suffering.

**THIRD CAUSE OF ACTION AS TO TRAILS CAROLINA, LLC AND ITS SOLE MANAGING MEMBER, WILDERNESS TRAINING & CONSULTING, LLC**
(Violation of NC UTPA, N.C.G.S. § 75-1.1 et seq.)

84.     All prior paragraphs are incorporated herein.

85.     Trails Carolina, LLC and its manager, WTC engaged in numerous unfair and deceptive acts that were immoral, unethical, oppressive, unscrupulous, and substantially injurious to Gertie, and other consumers. Trails Carolina has a knowledge advantage that consumers do not about its business, both prior to parents choosing to trust their children to its custody and care, and while Trails Carolina has exclusive custody and care over the children. Trails Carolina's unfair and deceptive acts include, without limitation, the following:

    a.  By mischaracterizing and intentionally withholding the risk profile of children it admits into its program and the risk of sexual misconduct being committed upon other children;

    b.  Of the 26 conditions listed on its website, Trails Carolina fails to disclose it accepts children who have been sexually abused or have committed sexual abuse themselves;

    c.  by characterizing its staff as experienced and expertly trained with decades of experience, when for the most part, children interact with young field staff who are only required to have GED, are not trained or licensed to provide any mental health service, and who are not adequately trained or supervised by Trails Carolina, LLC or its manager, WTC.

    d.  by withholding from parents the true risks of sexual assault in its program;

    e.  by withholding from parents timely information about children suffering assault and battery while in Trail Carolina's custody and care;

f. by publishing misleading statistics on its website that overstates the positive outcomes for students enrolled in its program;

g. by calling enrollees "students" when Gertie and other children in her group had very little schooling and received no academic credit for their time at Trails Carolina;

h. by failing to make the mandatory public reporting required by N.C.G.S. § 7B-301 or other criminal reports in order to avoid public scrutiny into its business operations;

i. by failing to take the necessary steps in its business operations to prevent and promptly intervene in incidents of sexual assault and battery, including choosing to admit and retain students with a history of sexual misconduct and failing to provide adequate training and supervision of its employees; and

j. and in such other ways as will be revealed in the course of discovery in this case.

86. As the direct result of the foregoing deceptive solicitation and the immoral, unethical and unscrupulous manner that Trails Carolina conducts its business, Gertie was substantially injured, and they hereby seek relief in excess of $75,000.00, exclusive of interest and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully demands a jury trial and prays for judgment against Defendants in an amount of actual and punitive damages as the trier of fact may find, attorneys' fees, prejudgment interest, costs, and for such further relief this Court may deem just and proper.

(Signature on next page)

s/Shaun C. Blake
Shaun C. Blake (N.C. Bar #35819)
Jenkins M. Mann, Esq. (*pending pro hac vice*)
Attorneys for Plaintiffs
ROGERS LEWIS JACKSON & MANN LLC
1901 Main Street, Suite 1200
Columbia, SC 29201
Tel: (803) 256-1268
Fax: 803-252-3653
Email:    sblake@rogerslewis.com
           jmann@rogerslewis.com

February 10, 2024