| | |
|---|---|
| Gertrude A. Seigel,<br><br>                              Plaintiff,<br><br>              v.<br><br>Trails Carolina, LLC, Wilderness Training &<br>Consulting, LLC, Derry C. O'Kane,<br><br>                              Defendants. | C/A No. 1:24-CV-00046-MOC-WCM<br><br>**AMENDED COMPLAINT**<br>(Jury Trial Demanded) |

Plaintiff ("**Gertie**") complaining of the Defendants above named, alleges and will show unto this Honorable Court as follows:

## <u>INTRODUCTION</u>

1.     This Complaint is based on the sexual abuse and neglect that Gertie was forced to suffer as a 12-year-old child because of the tortious and unlawful acts and omissions of Derry C. O'Kane ("**O'Kane**"), Trails Carolina, LLC, its owner and manager Wilderness Training & Consulting, LLC ("**WTC**"), and their other officers, directors, managers, employees and agents (all collectively "**Trails Carolina**")

2.     Today, the North Carolina Department of Health and Human Services notified Trails Carolina that its license to operate its "outdoor therapy" program has been revoked, and Trails Carolina is now suspended from admitting any new participants to its program.

3.     Trails Carolina, LLC is a small part of a larger business enterprise known as **Family Help and Wellness**.[1] Despite North Carolina's revocation of Trails Carolina's license, Family Help and Wellness continues to advertise Trails Carolina as a "clinically sophisticated and time-tested program that engages students through wilderness therapy, mindfulness and yoga, equine-assisted therapy, intentional transitions from wilderness expeditions to base camps, and academic

---

[1] https://famhelp.com/programs/#outdoor

engagement."

4.      Gertie is one of many victims who have suffered abuse and neglect and severe, life-long injuries while she was in the legal care and custody of the Defendants due to the long-standing, institutionalized practices of Wilderness Training & Consulting, LLC and Trails Carolina, LLC, which have ultimately led to the permanent closure of this facility today.

5.      Despite employing therapists and professionals who know or should know that North Carolina is a universal mandatory reporting state pursuant to N.C.G.S. G.S. 7B-301, Wilderness Training & Consulting, LLC and Trails Carolina, LLC repeatedly and intentionally failed to report abuse and neglect to authorities and failed to take prompt action to protect the children in its care.

6.      Moreover, Wilderness Training & Consulting, LLC and Trails Carolina, LLC utilized written policies and corporately-approved practices that contradicted North Carolina's mandatory reporting law and prevented appropriate regulatory and law enforcement oversight and intervention for the protection of the minors in their custody.

7.      Gertie's childhood sexual assault and neglect while she was in the custody of Trails Carolina and under the clinical care of O'Kane was the foreseeable result of the Defendants' collective negligent, reckless and wanton misconduct and the Family Help and Wellness policy of non-compliance with industry standards or North Carolina law.

8.      Trails Carolina, by its corporate policies and practices, acts, failures, condonations and omissions, and O'Kane were directly responsible for, and created an environment that enabled Gertie's abuse and neglect, as well as the abuse and neglect of other girls who are too victimized and afraid to allow their voice to be publicly heard.

## THE PARTIES, JURISDICTION AND VENUE

9.      Gertie is a citizen and resident of Chittenden County, Vermont.

10.      Trails Carolina, LLC is a manager-managed limited liability company organized and existing under the laws of the State of North Carolina since June 25, 2008.

11.      As described hereinbelow, Trails Carolina, LLC, is a citizen of North Carolina, Oregon, Texas, Utah, Idaho, Arizona, and Washington for the purposes of federal diversity jurisdiction.

12.      Trails Carolina, LLC's sole member and manager is Wilderness Training & Consulting, LLC. WTC is a limited liability corporation organized and existing under the laws of the State of Oregon. As described hereinbelow, WTC is a citizen of North Carolina, Oregon, Texas, Utah, Idaho, Arizona, and Washington for the purposes of federal diversity jurisdiction.

13.      WTC maintains its principal office in Salem, Oregon, and conducts its business under the trade name Family Help & Wellness.

14.      Upon information and belief, WTC engages in no corporate formalities as the sole shareholder of its alter ego.

15.      WTC is the sole owner and sole manager of Trails Carolina, LLC and completely controls and dominates its operations. WTC's officers and Trails Carolina, LLC's officers, are, upon information and belief, one and the same, and their actions are imputable for the purposes of vicarious liability to both WTC and Trails Carolina, LLC.

16.      Upon information and belief, Trails Carolina, LLC has no independent identity of that of WTC; WTC claims the "students" and of its various "programs" and their "families" as its own, depicting their images and faces on its own website – including **"Patrick**," who claims he was able to be comfortable trusting others while he was at Trails Carolina.

17.     WTC refers to Trails Carolina as just one of its "FHW programs." In addition to Trails Carolina, LLC, WTC is the sole owner and managing member of the licensed operating entity for **blueFire Wilderness**,[2] another Family Help & Wellness outdoor therapy program located in Challis, Idaho. WTC allows blueFire to take custody of and provide services to children as young as 11 years old in its outdoor therapy program.

18.     Upon information and belief, Trails Carolina, LLC is a mere instrumentality of WTC, which has excessively fragmented its single enterprise into a many number of separate legal entities, including but not limited to those it uses to operate the various Family Help and Wellness programs that are all a part of WTC's for-profit therapy enterprise in addition to Trails Carolina, LLC,:

a) WTC is the sole owner and managing member of the licensed operating entity for **Trails Momentum**, a Family Help and Wellness outdoor therapy program for young adults aged 18 to 25, which is located in Hendersonville, North Carolina.

b) WTC is the sole owner and managing member of the licensed operating entity for **Foundations Asheville**, a Family Help and Wellness residential community for young adults aged 18 to 25, which is located in Asheville, North Carolina.

c) WTC is the sole owner and managing member of the licensed operating entity for **ViewPoint Cente**r, a Family Help & Wellness psychiatric hospital that admits children as young as 6, which is located in Syracuse, Utah.

d) WTC is the sole owner and managing member of the licensed operating entity of **Asheville Academy**, a Family Help and Wellness therapeutic boarding school that admits children as young as 10 years old, which is located in Black Mountain, North

_____

[2] https://famhelp.com/team/girls-10-13/

Carolina;

e) WTC is the sole owner and managing member of the licensed operating entity of **Magnolia Mill School**, a Family Help and Wellness self-described learning community that admits children as young as 14 years old, which is located in Weaverville, North Carolina;

f) WTC is the sole owner and managing member of the licensed operating entity of **Sandhill Center**, a Family Help and Wellness residential treatment program that admits children as young as 8 years old, which is located in Los Lunas, New Mexico;

g) WTC is the sole owner and managing member of the licensed operating entity of **Elevations Residential Treatment and Educational Center**, a Family Help and Wellness residential treatment program that admits children as young as 13 years old, which is located in Syracuse, Utah;

h) WTC is the sole owner and managing member of the licensed operating entity of **Discover Seven Stars**, a Family Help and Wellness residential treatment program that admits children as young as 13 years old, which is located within the Elevations Residential Treatment and Educational Center in Syracuse, Utah;

i) WTC is the sole owner and managing member of the licensed operating entity of **New Focus Academy**, a Family Help and Wellness residential treatment program that admits children as young as 12 years old, which is located in Heber City, Utah;

j) WTC is the sole owner and managing member of the licensed operating entity of **ROOTs Transition**, a Family Help and Wellness self-described hybrid model of outdoor reflection and residential integration that admits children as young as 15

years old, which is located in Park City, Utah;

    k) WTC is the sole owner and managing member of the licensed operating entity of **Solstice West**, a Family Help and Wellness residential treatment center that admits children as young as 14 years old, which is located in Layton, Utah; and

    l) WTC is the sole owner and managing member of the licensed operating entity of **Uinta Academy**, a Family Help and Wellness residential treatment center that admits children as young as 12 years old, which is located in Wellsville, UT.

19.     **WTCSL, LLC**, is the sole member and manager of Wilderness Training & Consulting, LLC. WTCSL, LLC is a limited liability corporation organized and existing under the laws of the State of Oregon.

20.     WTCSL, LLC's membership is a diverse number of individuals invested in the wilderness therapy industry in locations where Family Health and Wellness operates its various programs. WTCSL's members include Trails Carolina's "founder," Graham Shannonhouse. Specifically, WTCSL, LLC members are:

    a) **WTC Holdco, LLC**, whose members are:

- FHW/THP Blocker, Inc., a private equity firm formed in and maintaining its principal place of business in Texas and that does business under the trade name Trinity Hunt Partners and, as it relates to Trails Carolina, is directed by Peter Stein;

- PGO, LLC, whose member is Sue Crowell, a citizen of North Carolina;

- Opal Creek Capital, LLC, whose member is Tim Dupell, a citizen of Oregon;

- JLC Family, LLC, whose member is Johnny Deblock, a citizen of Washington; and

- Wayne Laird, who is a citizen of Oregon and who is the Chief Financial Officer of Family Help and Wellness and its subsidiaries, including Trails Carolina, LLC;

b) Graham Shannonhouse, a citizen of North Carolina;

c) Kathryn Huffman, a citizen of North Carolina;

d) Cat Jennings, a citizen of North Carolina;

e) Dilly Bean LLC, whose sole member is Bryan Tomes, a citizen of North Carolina;

f) John Gordon, a citizen of North Carolina;

g) Mary S. Pierce, a citizen of North Carolina;

h) Rebecca Gebb, a citizen of North Carolina;

i) SEJC Holdings, LLC, whose sole member is Kyle Gillett, a citizen of North Carolina;

j) FNS Group, LLC, whose sole member is Dan Stuart, a citizen of Utah;

k) Ikaika Holdings LLC, whose sole member is Keoni Anderson, a citizen of Utah;

l) Randi Nelson, a citizen of Utah;

m) Jen Wilde Consulting PLLC, whose sole member is Jennifer Wilde, a citizen of Utah;

n) Laura Burt, a citizen of Utah;

o) Mahalo Nui, LLC, who sole member is Judith Jacques, a citizen of Utah;

p) Scott Hess, a citizen of Utah;

q) Shayne Gallagher, a citizen of Utah;

r) Sheri Gallagher, a citizen of Utah;

s) Jesse Long, a citizen of Oregon;

t)  Hayden Dupell, who is a citizen of Oregon and who is the Chief Operating Officer of Family Help and Wellness and its subsidiaries, including Trails Carolina, LLC;

u)  Kirsten Morgan, a citizen of Oregon;

v)  Matt Roy, a citizen of Oregon;

w)  Steven Stradley, a citizen of Oregon;

x)  Jon Worbets, a citizen of Idaho;

y)  Kathy Rex, a citizen of Idaho;

z)  Reid Treadaway, a citizen of Idaho;

aa) Simpson Holdings, L.C., whose two members are Jeff Simpson and Becky Simpson, who are citizens of Arizona; and

bb) White Mountain Consulting LLC, whose sole member is Josh White, a citizen of Arizona.

21.  Upon information and belief, Trails Carolina, LLC is left thinly capitalized in order to contribute all or most of its net earnings to the private equity fund and many individual owners who seek to profit off its operations.

22.  This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists between Gertie and the Defendants, and the amount in controversy in this case exceeds $75,000.00, exclusive of costs and interest.

23.  Venue is proper in the Asheville Division of the United States District Court for the Western District of North Carolina because the most substantial part of the events and omissions giving rise to Gertie's claims occurred in Transylvania County.

24.  Prior to bringing the instant action, Gertie, through her lawyers, has retained an expert witness, and the medical care and all medical records pertaining to the alleged negligence

that are available to Gertie after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the "therapeutic" care Defendants provided Gertie did not comply with the applicable standard of care.

25.     The undersigned further asserts, in compliance with Rule 9(j) of the North Carolina Rules of Civil Procedure, that this pleading alleges facts establishing negligence under the existing common-law doctrine of *res ipsa loquitur*, because it is within the common knowledge, experience and sense of laymen that Defendants should not have required Gertie to suffer deprivation and physical neglect while she was in their custody, and they should not have required Gertie to suffer additional trauma by continuing to sleep with her sexual assailant even after receiving actual notice of Gertie's report of sexual assault.

<u>**VICARIOUS LIABILITY OF TRAILS CAROLINA, LLC<br>AND WILDERNESS TRAINING & CONSULTING, LLC**</u>

26.     Upon information and belief, Graham Shannonhouse ("**Shannonhouse**") was an employee of Trails Carolina and the executive director of Trails Carolina in 2015 and 2016, and she reported to and was supervised by the individuals who acted as the officers for WTC and Trails Carolina, LLC at that time. Shannonhouse was negligent, grossly negligent, and wanton in to failing to train and supervise her subordinates at Trails Carolina and ensure that Gertie was not subjected to abuse and neglect during her participation at Trails Carolina. Trails Carolina and WTC are both vicariously liable for Shannonhouse's negligent, grossly negligent, and wanton acts of negligence.

27.     Upon information and belief, Dottie Lank ("**Lank**") was employed by Trails Carolina as the Director of Admissions. Trails Carolina and WTC employed Lank to help convince parents to send their children to Trails Carolina and to work with Candace Bynum ("**Bynum**"), the

Admissions Coordinator employed by Trails Carolina in 2016, to implement Trails Carolina's admission policies and procedures. Trails Carolina and WTC are both vicariously liable for Lank and Bynum's negligent, grossly negligent, and wanton acts of negligence in admitting and retaining participants into the Trailblazers program in a negligent, grossly negligent, and wanton manner as described below.

28.     Upon information and belief, Jeniveve Rollins, LCSW ("**Rollins**"), was the "clinical director" of Trails Carolina at the time of Gertie's enrollment in the program. Upon information and belief, Rollins was O'Kane's direct supervisor, and Rollins was supervised by the officers for WTC and Trails Carolina, LLC at that time. Trails Carolina and WTC are both vicariously liable for Rollins negligent, grossly negligent, and wanton acts of negligence in failing in to failing to train and supervise O'Kane; in failing to ensure that the clinical services provided to Gertie during her participation at Trails Carolina met the standard of care; and in failing to report the abuse and neglect Gertie suffered at Trails Carolina.

29.     Upon information and belief, O'Kane is a citizen of Buncombe County, North Carolina and was Gertie's licensed clinical mental heath counselor while Gertie was at Trails Carolina. O'Kane was the "Trailblazers Primary Therapist" during Gertie's participation at Trails Carolina, and O'Kane was responsible for the provision of clinical services to Gertie while she was at Trails Carolina. Trails Carolina and WTC are both vicariously liable for Rollins negligent, grossly negligent, and wanton acts of negligence as set forth in more detail below.

30.     In 2015, Trails Carolina employed Debbie Whitmire ("**Whitmire**") as its "risk and compliance coordinator."  From the date of her employment through Gertie's time as a participant at Trails Carolina, Whitmire was to ensure that Trails Carolina was up to date with the most current risk management practices and support Trails Carolina's staff in the practical application of its

policies and procedures. However, Whitmire was negligent in her training and practical support of Trails Carolina's employees as demonstrated by the improper policies adopted at Trails Carolina and the abuse and neglect that Gertie and other participants were caused to suffer. Trails Carolina and WTC are both vicariously liable for Whitmire's negligent, grossly negligent, and wanton acts of negligence.

31. Jeremy Whitworth ("**Whitworth**") was employed as a "Program Director" at Trails Carolina in 2016, and he was actively involved in the oversight of all day-to-day operations during Gertie's participation at Trails Carolina. Trails Carolina and WTC are both vicariously liable for Whitworth's negligent, grossly negligent, and wanton acts of negligence in failing to train and supervise the employees of Trails and ensure that Gertie was not subjected to abuse and neglect during the period of time she was in the custody of Trails Carolina.

32. Thor Jones ("**Jones**") and Rachel Bisker ("**Bisker**") were employed as the two "**Field Supervisors**" at Trails Carolina in 2016, and these two were actively involved in the oversight of all of the field staff during Gertie's participation at Trails Carolina. Trails Carolina and WTC are both vicariously liable for Jones and Bisker's negligent, grossly negligent, and wanton acts of negligence in failing to train and supervise the field staff and ensure that Gertie was not subjected to abuse and neglect during the period of time she was in the custody of Trails Carolina.

33. Trails Carolina employed a number of young adults it refers to as "field staff" at Trails Carolina in 2016 during Gertie's participation in its program, including individuals named **Rasheta**, **Nathan**, **Ryan**, **Paul**, **Liz**, **Sarah**, and **Ella**. Because "students" are not permitted to know the last names of staff or each other, Gertie has no knowledge of the last names of Trails Carolina's "field staff" who interacted with her during her time at Trails. However, Trails Carolina

acted through its employees in a manner that resulted in Gertie's unreported abuse and physical neglect during her time at Trails Carolina. Trails Carolina and WTC are both vicariously liable for negligent, grossly negligent, and wanton acts of negligence of any of its employed field staff of Trails Carolina that witnessed Gertie's abuse and neglect and failed to report that abuse and neglect in order to stop her suffering.

## COMMON FACTUAL ALLEGATIONS

**A.     Family Help and Wellness' Trailblazers Program at Trails Carolina**

34.     From June 2008 until the revocation of its license today, Trails Carolina has been engaged in the business of profiting off of the provision of "wilderness therapy" to children ages 10 through 17 as a part of Family Help and Wellness' for-profit therapy enterprise.

35.     Gertie's parents were introduced to Trails Carolina in 2016 by Kristine "Kris" Karge ("**Karge**"), an educational consultant in Vermont who had a longstanding, mutually beneficial business relationship with Family Help and Wellness prior to her retirement in 2021.

36.     In early 2016 - when Gertie's parents were considering Trails Carolina's program - Trails Carolina listed a number of accreditations and memberships in its marketing materials[3] in order to project a false level of competence and adherence to professional standards. The accreditation and memberships that Trails Carolina included in its marketing materials were National Association of Therapeutic Schools and Programs ("**NATSAP**"); the Commission on Accreditation of Rehabilitation Facilities ("**CARF**"); AdvancedEd accreditation by Cognia, Inc. ("**Cognia**"); the Outdoor Behavioral Health Council ("**OBH**"); and the North Carolina Department of Health and Human Services ("**DHHS**").

37.     In 2016, Trails Carolina marketed its "Trailblazers" wilderness therapy program

---

[3] Including its website at http://trailscarolina.com (as of April 2016)

for young girls ages 10-13, like Gertie, as follows:

> Trailblazers is the only single gender program in the U.S. for students' ages 10-13 years. It is specifically tailored to meet the demanding developmental needs of Pre-Teens in a safe wilderness camp environment filled with the strong routines, structure, and concrete experiences children this age need. However, the Trails Team provides this population more "hand-holding" and extra support to ensure the students feel safe and protected. For social reasons and brain development stages, we separate girls and boys and provide a therapeutic approach that addresses the specific gender needs of this age group.

> Research has shown that pre-adolescents thrive in safe, predictable and structured environments like that of our youth wilderness therapy program. We have designed our Youth Program, at one of the best programs wilderness programs for troubled youth, to support specific developmental needs of 10-13 year old youth breaking the cycle of troubling behaviors and replacing them with more positive and mature decisions and relationships. We help students find internal motivation for change, which leads to long-term success when they rejoin their family.

> Technology and social media are part of this age group's every waking moment. Girls especially are exposed to media messages of how they are supposed to be within their gender. However, their brains haven't yet developed the cognitive abilities to compartmentalize these messages. With so many unfiltered choices, girls at this age end up engaging in behavior of a much older teenager.

> In the wilderness, girls don't have access to technology, mirrors and makeup, which frees their minds from distractions and lets them be vulnerable and live in the moment. This is an ideal time for our team of field instructors and therapist to engage in more insight oriented conversations that help these girls build courage to be their own self.[4]

38.     Despite the façade of providing a safe and therapeutic residential treatment center for children, Trails Carolina has systemically failed to screen and assess the children in its legal custody and created an environment where troubled children have and do sexually assault other children within Trail Carolina's custody and care.  Further, Trails Carolina has systemically failed to provide adequate medical care, food, and shelter for young children in its custody.

---

[4] http://trailscarolina.com/trails-north-carolina/programs-for-troubled-teens (as of April 2016).

**B.      The institutional policies of Trails Carolina giving rise to Gertie's neglect and abuse**

39.      Since June 20, 2008, Trails Carolina's written policy and screening criteria has been that it will admit into its wilderness outdoor therapy program students with emotional, behavioral, or mental health disorders that present with a variety of presenting problems, such as low self-esteem, depression, anxiety, substance abuse, body image issues, eating disorders, self-harming behaviors, suicidal ideation, noncompliant/defiant behaviors, family problems and conflict, ADHD, academic struggles, grief, and loss, developing personality disorders, trauma, adoption, isolation, and attachment issues, processing difficulties such as nonverbal learning disorder and ASD, negative peer relationships, and manipulation/entitlement. This policy, however, did not distinguish admission criteria between the Trailblazers program and the Trails Carolina program for older adolescents.

40.      In 2016, Trails Carolina did not have a written policy or written screening criteria that permitted Trails Carolina to accept into its Trailblazers program or retain minor students who reported to have:

a)   engaged in sexual acts with other person(s);

b)   aggressive sexual urges; or

c)   have engaged in problematic sexual behavior.

41.      In 2016, Trails Carolina did not advise parents of prospective students, including Gertie's parents, that it would accept into its Trailblazers program or retain minor students who were reported to have:

a)   engaged in sexual acts with other person(s);

b)   aggressive sexual urges; or

c)   have engaged in problematic sexual behavior.

42. However, in 2016, Trails Carolina disregarded obvious risk of harm to Gertie and other students and admitted into and retained in its outdoor therapy programs, including its Trailblazers program, young children who were reported to Trails Carolina to have:

    a) engaged in sexual acts with other person(s);

    b) aggressive sexual urges; or

    c) have engaged in problematic sexual behavior.

43. Despite employing therapists and professionals who know or should know that North Carolina is a universal mandatory reporting state pursuant to N.C.G.S. G.S. 7B-301, Trails Carolina repeatedly and intentionally failed to report abuse and neglect to authorities and failed to take prompt action to protect the children in its care.

44. Moreover, Trails Carolina utilized policies and procedures with its employed staff that contradict North Carolina's mandatory reporting law and prevented appropriate regulatory and law enforcement oversight and intervention for the protection of the minors in their custody.

45. Specifically, Trails Carolina adopted Policy number 6.12 "Abuse Reporting – Within Program" on June 20, 2008 – and revised that policy during the middle of Gertie's stay – requiring the employees of Trails Carolina to defer all decisions whether to report suspected abuse or neglect to "a Clinical or Program Leadership Team" within Trails Carolina.

46. Although Policy number 6.12 states that documentation of the incident is to be made by the witnessing staff person and that "The Primary Therapist and/or Clinical Director" will call NCDSS and, where appropriate, law enforcement, this was not the policy enforced or put into practice at Trails Carolina.

47. Trails Carolina adopted Policy number 7.05 on June 20, 2008 – and amended it on June 1, 2016 in the middle of Gertie's participation – that purports to guarantee all students the

right to adequate food, water, shelter, clothing, and privacy; the right to be treated with respect and dignity; and to be free from being demeaned and humiliated. However, the Defendants failed to train and implement this policy during Gertie's admission.

48. Trails Policy number 7.05 also directly contradicts North Carolina's declaration of rights in N.C.G.S. § 122C-51 and 62 in numerous ways, and this was used to prevent Gertie from being able to consult directly with her parents regarding the abuse and neglect she was suffering at Trails Carolina.

49. Defendants fail to disclose to parents how little counseling children in their care receive with a licensed therapist, which is, upon information and belief, an hour or less per week. Instead, Defendants rely field staff, who are only required to be 21 years old and possess a GED, to "carry out" "individualized" therapeutic treatment plans.

50. Upon information and belief, Trails Carolina has spent years concealing incidents of physical neglect, child deprivation, injury, and sexual assault and battery between children from its regulators and the public, including Plaintiff and her family, for the deceptive purpose of lulling parents into a false sense of security when entrusting their children to Trails Carolina's exclusive custody and care.

51. Trails Carolina, by its corporate policies and practices, acts, failures, condonations and omissions, and O'Kane were directly responsible for, and created an environment that enabled Gertie's abuse and neglect, as well as the abuse and neglect of other girls who are too victimized and afraid to allow their voice to be publicly heard.

52. Rather, Trails Carolina attempts to mask events where children in its care are injured behind confidentiality agreements, and it fails to report events to the North Carolina Department of Health and Human Services, Trails Carolina, LLC's licensing regulator, even when

faced with reasonable cause to suspect abuse or neglect has occurred in its program.

53. Upon information and belief, Trails Carolina, by and through its owners, officers, managers, employees and agents, have known for years that some of the children have sexually assaulted and battered other children at Trial Carolina. Trails Carolina knew or should have known the dangers particular children presented to others, such as Gertie.

54. However, Trails Carolina ignored that danger and permitted children with aggressive sexual urges to exploit other children, like Gerties despite Trails Carolina's actual and constructive knowledge that these events are occurring.

55. Upon information and belief, Trails Carolina knew or should have known that:

a) Putting children with histories of sexual abuse and/or sexual misconduct into yurts or tents where other children were forced to sleep alongside them provides children with aggressive sexual urges with access to vulnerable children in secluded and poorly supervised settings;

b) Trails Carolina conditions the children to adhere to the practice of strict obedience of its employees, and encourages an environment of "breaking down" the children, creating an environment of fear and silence, which creates an environment that fails to protect children from those with aggressive sexual urges.

c) Trails Carolina promotes the ideas of strict compliance, of not letting the children know each other's or field staff's last names and of not "rocking the boat," and of specifically shaming victims to not tell others what happened and blaming victims for events that occurred, all of which help facilitate a culture that keeps young victims silent and compliant and fosters an environment for sexual assault.

56. Upon information and belief, Defendants knew or should have known that if they

advised parents of past incidents of assault, battery, and sexual misconduct, parents would not trust them with their children's exclusive custody and care, costing Trails Carolina the profit for which it operates.

## C.  The neglect and abuse Gertie suffered at Trails Carolina

57.     On or about May 5th, 2016, Gertie was only 12 years of age when she was "gooned" from her home in Vermont; a man and a woman who she didn't know took her by force and brought her to Trails Carolina in Transylvania County, North Carolina.

58.     Gertie was a child under the custody and legal care of Trails Carolina from on or about May 6, 2016, until July 27, 2016.  She was entitled to all of the protections of North Carolina law, including the right to "dignity, privacy, humane care, and freedom from mental and physical abuse, neglect, and exploitation"[5] throughout her entire stay at Trails Carolina.  As a minor in a 24-hour "facility," Defendants were required to ensure that Gertie was, among other rights:

    a)  provided opportunities to enable her to mature physically, emotionally, intellectually, socially, and vocationally;

    b)  provided appropriate structure, supervision and control;

    c)  administer medication in accordance with accepted medical standards and only upon the order of a physician as documented in the client's record;

    d)  permitted to consult with her parents;

    e)  permitted to make and receive telephone calls;

    f)  permitted to receive visitors for at least 6 hours a day;

    g)  permitted to keep and use personal clothing and possessions under appropriate supervision; and

---

[5] N.C.G.S. § 122C-51

h) permitted individual storage space for the safekeeping of personal belongings.[6]

59. Gertie was not evaluated by Rollins, O'Kane or any other clinical provider until at least five (5) days after the people who "gooned" her from her home left her in Trails Carolina's custody.

60. After a week of Gertie being at Trials Carolina, a student in Gertie's Trailblazer cohort referred to herein as "**Victim #1**" was sexually assaulted by a student referred to herein as "**Jane Doe**." Victim #1 disclosed the sexual assault to her cohort of girls and Trails Carolina's field staff.

61. Trails Carolina's field staff did not remove Jane Doe from Gertie's cohort, but instead took away all of the children's tent "privileges" and made all of the young women sleep in a line under a tarp instead, causing the children physical discomfort.

62. Around Gertie's second week at Trails Carolina, Victim #1 was again sexually assaulted by Jane Doe. Gertie and another child - who was later victimized by Jane Doe - disclosed the sexual assault to Trails Carolina's field staff, who were not the same staff as the previous week; these members of Trails Carolina's field staff disclosed Victim #1's sexual assault to O'Kane.

63. However, Despite having cause to suspect abuse and neglect and having reported it to O'Kane per Trails Carolina's policy, the Trails Carolina field staff did not report it to NCDSS or law enforcement.

64. Although Jane Doe was temporarily placed in a "burrito,"[7] she remained with Gertie's cohort of girls.

65. Thereafter, Plaintiff wrote her parents a letter, attempting to describe Victim #1's

---

[6] N.C.G.S. §§ 122C-57, 62

[7] When Trails Carolina "burritos" a "student", that "student" sleeps on top of one end of the tarp, and the rest of the tarp is wrapped over the "student" and then placed under an adjacent staff's sleeping setup, causing the student to be bound throughout the night while the field staff sleeps.

assault.

66.     Trails Carolina's field staff and therapists read all outgoing and incoming mail exchanged between children and parents.

67.     Gertie's parents reached out to O'Kane who responded, "I will definitely stay on top of the lying in the group. I'm pretty sure I know who [Gertie] is talking about AND I'm certain that student's story is an embellishment. I appreciate the information and will definitely watch for anything transpiring in the group culture as a result."

68.     O'Kane also wrote to Gertie's parents "I have no legitimate concerns about any of [Gertie's] reports." However, despite having cause to suspect abuse and neglect, O'Kane did not report the sexual abuse of Victim #1 to the regulatory authorities or law enforcement, much less the students' parents.

69.     During Gertie's session with O'Kane, Gertie relayed Jane Doe made her nervous and discussed Victim #1's assault.  O'Kane stated that Gertie was "mature" enough to be a bigger person and urged her to befriend Jane Doe. O'Kane "challenged" Gertie to "do this for her."

70.     Jane Doe began to fixate on Gertie, disclosing to her that she had been raped and describing in detail to her what an erect penis looked like. Jane Doe began giving Gertie sharp objects, hoping that Gertie and Jane Doe could self-harm together. Jane Doe attempted to self-harm herself in front of Gertie and was again placed temporarily in the "burrito."

71.     Trails Carolina's supervisors failed to supervise and intervene in Gertie's cohort for the health and safety of the students when there was clear cause to do so. This is partly because supervisors, like O'Kane, only checked in with the untrained, unlicensed members of the field staff who watched Gertie rarely and for brief periods of time; the vast majority of the student's time is spent under the care of untrained, unlicensed, exhausted and overwhelmed young adults.

72.     O'Kane only interacted with Gertie individually 11 times, for approximately 30-45 minutes per interaction, and in a group setting 6 times, across the 82 days that that Gertie was in Trails Carolina's "therapeutic" program.

73.     Likewise, while Trails Carolina touts its use of "mindfulness and yoga" as a part of its program, Gertie was only permitted to participate in 3 yoga sessions across the 82 days.  This is the total of the "clinical" services Trails Carolina provided Gertie during her time at Trials Carolina.

74.     While Trails Carolina also touts its academic offerings to solicit parents to enroll their children, Gertie received next to zero academic instruction at Trails Carolina.

75.     Several weeks after the assault on Victim #1, Jane Doe sexually assaulted a student referred to herein as **Victim #2**. She disclosed the assault to Gertie and expressed the concern that Gertie would be next.  This was said in the presence of Trails Carolina's field staff, who again, did not remove Jane Doe from the cohort. O'Kane was also informed, and no one reported the sexual assault to the regulatory authorities or law enforcement, much less the student's parents.

76.     Approximately one week later, Jane Doe asked Gertie to run away. Gertie disclosed this to field staff and again stated Jane Doe was fixated on her, causing her to fear for her safety.  Despite Gertie disclosing her worries to field staff, that very night she was placed to sleep next to Jane Doe in a Yurt.

77.     That night, on or about Gertie's 37th day at Trails, Jane Doe raped Gertie. Jane Doe probed Gertie with her fingers and performed oral sex on Gertie without Gertie's consent.

78.     The next day, Gertie first disclosed the sexual assault to O'Kane. O'Kane did not disclose the sexual assault to her parents, NCDSS or any other authority.  Rather, she made Gertie promise not to tell anyone else about the assault and told Gertie she was equally at fault.

79.     Because Gertie was forbidden from disclosing the rape to the other girls and field staff, Gertie wrote of her assault in her journal while Victim #2 read over her shoulder. When Victim #2 read of the assault, she started screaming. Field staff discovered Gertie's sexual assault and approached O'Kane.

80.     O'Kane told Gertie that crossing physical boundaries "was not ok" but what Gertie did was worse because she caused additional "drama" by disclosing her sexual assault to others. She then asked Gertie if she ever used the word "no" when she was being sexually assaulted by Jane Doe.

81.     A few days later, Victim #2 was removed from the group for "manipulating people's beliefs," but Jane Doe remained throughout the duration of Gertie's time at Trails in plain violation of Trails Carolina policy 10.05, which requires the suspension or expulsion of a student from the Trailblazers program that acts in a way that threatens the physical or emotional safety of other students.

82.     About six weeks into her time at Trails Carolina, Elizabeth Schall of Create Clinical evaluated Gertie. She made several recommendations for treatment and pointed out that Gertie's eating issues should be monitored; however, Trails Carolina and O'Kane failed to monitor or otherwise develop a treatment plan that addressed the issues and risk of neglect raised by the evaluation.

83.     While Gertie was at Trails Carolina, the water filters that the group used to drink water from a nearby stream broke. The filters were clogged and black, and the group was forced to filter water through a dirty bandana.  It took Trails Carolina about three weeks to replace the filter.  At that time, Gertie and other students became sick.  Upon information and belief, some students developed pinworms, and despite never seeing a physician, Gertie was required to take

medication in violation of N.C.G.S. § 122C-57.

84.     Gertie was forced to hike all day – from taking down camp in the morning until it was time to set up for sleep.  For the amount of calories expended due to the hiking, Gertie did not receive enough food despite her rights under N.C.G.S. § 122C-51.

85.     Gertie was not provided a shower until her tenth day at Trails Carolina, where upon showering, she noticed she had already lost significant weight, which was due to inadequate caloric intake.

86.     Due to the children's tent privileges being removed after the sexual assault of Victim #1, Gertie and the children in her cohort were forced to sleep outside in the rain, with her sleeping bag moving around the campsite with her in it, due to the force of the water.

87.     Gertie also suffered symptoms of a urinary tract infection (UTI) for weeks before eventually being given a UTI test by staff.  The test became bright purple, and Gertie, despite still not seeing a physician, was given antibiotics in violation of N.C.G.S. § 122C-57. The symptoms persisted after she finished the antibiotics, but she was not permitted to see a physician in violation of N.C.G.S. § 122C-57.

88.     Gertie also had two staph infections on her arm during her time at Trails Carolina and was not taken to a physician for treatment; she was treated by unlicensed field staff instead. The infections left a scar that is still visible, although faded over the years.

89.     Despite her rights guaranteed under North Carolina Code 122C-62, Gertie was repeatedly told she could not call and consult with her parents while she was at Trails Carolina, nor was she provided appropriate structure, supervision and control.

90.     Gertie's childhood sexual assault while she was in the custody of Trails Carolina and under the clinical care of O'Kane was the foreseeable result of the Defendants' negligent,

reckless and wanton misconduct and corporate policy of non-compliance with industry standards or North Carolina law.

91.     As a result of this abuse and neglect, Gertie has been substantially harmed.

**<u>FOR A CAUSE OF ACTION AS TO DERRY C. O'KANE</u>**
(Negligence/Gross Negligence)

92.     All prior paragraphs are incorporated herein.

93.     The North Carolina Board of Licensed Clinical Mental Health Counselors licensed O'Kane on March 12, 2015.

94.     In 2016, O'Kane held herself out as a skilled professional capable of working with children who were experiencing emotional and behavioral difficulties and as part of the "expertly trained" team employed by Trails Carolina.

95.     At all times since January 1, 2016, O'Kane knew or should have known that N.C. Gen. Stat. § 7B-301 requires any person who has cause to suspect that any juvenile is being abused or neglected to make a report to the director of the department of social services in the county where the juvenile resides or is found.

96.     Trails Carolina also has a policy that requires O'Kane to report suspected abuse to the department of social services, or to at least gather the necessary data and receive supervision from her clinical and/or program leadership team at Trails Carolina, LLC and its manager, WTC.

97.     At all times relevant to the events related to the Complaint, O'Kane was Gertie's therapist at Trails Carolina.

98.     In holding herself out as an expert, O'Kane created a false sense of security and safety to Gertie and her parents who relied on her expertise.

99.      O'Kane knew about the sexual assaults of Victim #1 and Victim #2 and did not file a report with the department of social services as required by law.

100.     Rather than protect Gertie from the obvious threat of sexual assault, O'Kane told Gertie,

who expressed worry and concern about Jane Doe to O'Kane, to get closer to Jane Doe. O'Kane also reassured Gertie's parents who expressed concerned after Gertie wrote a letter to her parents concerned about the sexual assault of Girl 1, that these allegations were "lies" and "drama."

101. O'Kane was required to use a degree of care and skill which is ordinarily employed by the profession generally, under similar conditions and like surrounding circumstances and protect Gertie from the foreseeable sexual assault she suffered.

102. O'Kane deviated from the applicable standards of care, breached her duty and was negligent and grossly negligent in failing to report the sexual abuse of Victim #1 and Victim #2 to the NC Department of Social Services, triggering a law enforcement investigation. O'Kane failed to exercise even the slightest degree of care to protect Gertie from Jane Doe. Further, O'Kane used her power of authority to try to make Gertie believe she was somehow at fault for the sexual assault, furthering Gertie's damages.

103. O'Kane also deviated from the standard of care in failing to implement any particular therapy or treatment relating to any diagnoses or recommendations that stemmed from the evaluation performed by Dr. Elizabeth Schall of Create Clinical.

104. O'Kane's breaches of the standard of care were proximate cause of Gertie's injuries, causing her to suffer grievous bodily injury, PTSD, dissociative symptoms, eating disorder, panic attacks triggered by stimuli that reminds her of her experience at Trails Carolina, self-hatred and loathing, emotional pain and suffering.

### FOR A CAUSE OF ACTION AS TO TRAILS CAROLINA, LLC AND ITS SOLE MANAGING MEMBER, WILDERNESS TRAINING & CONSULTING, LLC
(Negligence/Gross Negligence)

105. All prior paragraphs are incorporated herein.

106. Trails Carolina specifically marketed their services and experience, and invited girls with emotional issues to their therapeutic residential program, including Gertie, who was an invitee.

107. Trails Carolina holds itself out as a leader in wilderness therapy that helps children through connecting with nature and its mission "is to give the child confidence, coping mechanisms, and

communication skills that will help them become the best versions of themselves." Because of this expertise, Gertie's parents entrusted Gertie to Trails Carolina.

108.     Trails Carolina, LLC's staff and its manager WTC held Trails Carolina out as an expert in working with girls who had mental health disorders, behavioral concerns, developmental conditions, and social challenges.

109.     When Trails Carolina took minor children into this program, upon information and belief, parents were required to sign over legal custody of their child to Trails Carolina. Trails Carolina assumed all duties *in loco parentis* for each and every child invitee, including Gertie.

110.     Trails Carolina, LLC, and its manager, WTC, owed a duty to:

    a.     adequately warn of the risk of child sex abuse in its program prior to taking custody and large sums of money from the children's parents;

    b.     adequately train and supervise those persons acting on its behalf how to guard against, identify, and respond to sexual assault and battery, as well as other forms of physical abuse and neglect;

    c.     to protect its students from sexual assault and battery, as well as other forms of medical, nutritional and physical deprivation and neglect;

    d.     to adequately investigate claims of sexual abuse and other neglect by minor enrollees;

111.     Trails Carolina, LLC's staff and its manager WTC owed a duty to provide a safe environment for the children in its custody for a number of reasons in addition to its duties *in loco parentis*, including without limitations, the following:

112.     Trails Carolina, LLC, and WTC, directly and through the acts and omissions of those persons for whom they are vicariously liable, breached their duties by, including but not limited to:

    a.  Trails Carolina undertook and administered psychological therapy, youth-

development programs, activities, and services to minors, and as a result assumed a duty to Gertie and other children to exercise reasonable care in connection with its therapy programs, activities, and services;

b. N.C.G.S. §7B-301 places an affirmative duty upon Trails Carolina, and its employees and agents to report sexual abuse to Gertie and other children, and N.C.G.S. §7B-310 removes any privilege that Trail Carolina's counselors could otherwise use to shield the failure to report;

c. Trails Carolina had special relationships with the children who were entrusted to their care and control (including Gertie);

d. Trails Carolina was and is a youth-serving organization obligated to take reasonable steps to respond to and prevent sexual abuse of the children who participate in its programs;

e. failing to adopt policies and procedures that required its employees and clinical staff to perform a proper assessments of children admitted to Trails Carolina that identifies disorders and other factors and developing an individualized plan of care for the children admitted to Trails Carolina;

f. failing to assure Gertie was placed into a group setting with children who had similar mental health issues.

g. failing to monitor the premises where it held custody over the children and adequately control Jane Doe, a minor invitee, to ensure that she did not do foreseeable harm Gertie, who was also an invitee under North Carolina law

h. failing to provide sufficiently trained staff to adequately control minor invitees;

i. failing to develop any centralized format to ensure that health and safety self-

inspections were being performed by Trails Carolina

j. failing to systematically review the appropriateness of services and pattens of service utilization at Trails Carolina or adopt policies and procedures that required this to be done;

k. failing to provide adequate security for minor children in their custody;

l. failing to follow statutory mandates and their own policies and procedures relating to investigating and reporting sexual assaults; and

m. failing to adequately investigate and report the sexual assault of Gertie, leaving her subject to additional emotional distress and injury following her assault.

n. failed to act as a reasonable persons would to protect the minor Gertie and failed to take even the slightest degree of care and were grossly negligent in their disregard for the well being of Gertie, who was entrusted to their care.

o. and in such other ways as will be revealed in the course of discovery in this case.

113. Given Trails Carolina's unique knowledge that some of the children had a history of sexual abuse and/or sexual assault, and the fact that its field staff and O'Kane knew Jane Doe had sexually assaulted at least two other girls, the risk to Gertie and other students was imminently and reasonably foreseeable to Trails Carolina, LLC and its manager, WTC, yet they failed to intervene when they owed a duty to do so to avoid foreseeable harm to Gertie.

114. It was foreseeable to Trails Carolina, LLC and WTC that leaving Gertie in close proximity to Jane Doe at night, who had been raped prior to attending Trails Carolina and who had sexually assaulted two other girls at Trails Carolina, and of whom Plaintiff had expressed fear of, would result with Gertie being injured.

115. It was foreseeable to Trails Carolina, LLC and WTC that their inadequate policies and procedures, their lack of appropriate supervision and training of employees, their failure to accurately assess

their employee's skills or the effectiveness of the services provided to children, and their failure to systemically address ethics, legal requirements, boundaries, trauma, and compliance would result in children, such as Gertie suffering inexcusable physical harm and neglect.

116.    Trails Carolina, LLC and its manager, WTC's actions and inactions were the proximate cause of Gertie's injuries, causing her to suffer grievous bodily injury, PTSD, dissociative symptoms, eating disorder, panic attacks triggered by stimuli that reminds her of her experience at Trails Carolina, self-hatred and loathing, emotional pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands a jury trial and prays for judgment against Defendants in an amount of actual and punitive damages as the trier of fact may find, attorneys' fees, prejudgment interest, costs, and for such further relief this Court may deem just and proper.

s/Shaun C. Blake
Shaun C. Blake (N.C. Bar #35819)
Jenkins M. Mann, Esq. (*pending pro hac vice*)
Attorneys for Plaintiffs
ROGERS LEWIS JACKSON & MANN LLC
1901 Main Street, Suite 1200
Columbia, SC 29201
Tel: (803) 256-1268
Fax: 803-252-3653
Email:    sblake@rogerslewis.com
              jmann@rogerslewis.com

March 28, 2024