UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1 :24-CV-00046-MOC-WCM

| | |
|---|---|
| Gertrude A. Siegel,<br><br>                                    Plaintiff,<br><br>v.<br><br>Trails Carolina, LLC, Wilderness Training &<br>Consulting, LLC, and Derry C. O'Kane,<br><br>                                    Defendants. | **MEMORANDUM IN OPPOSITION TO<br>DEFENDANTS' MOTION FOR ORDER<br>PROHIBITING EXTRAJUDICIAL<br>STATEMENTS** |

The undersigned submit this Memorandum in Opposition to Plaintiff's Motion for Order Prohibiting Extrajudicial Statements regarding "this instant lawsuit and allegations" against Defendants (the "Motion"). [Doc. 23.]

## STATEMENT OF THE CASE

On February 10, 2024, Gertie Siegel ("Gertie") filed her complaint seeking justice for the sexual abuse and neglect she suffered as a 12-year-old child due to the unlawful acts and omissions committed by Defendants Trails Carolina, LLC, a residential wilderness therapy program located in Transylvania County, North Carolina, its former therapist, Derry C. O'Kane, and its true owner and operator, Wilderness Training and Consulting, LLC d/b/a Family Help and Wellness. [Doc. 1.] Defendants filed their Answer on March 6, 2024, and then Defendants filed an Amended Answer on March 20, 2024. [Docs. 18, 20.] Gertie filed her Amended Complaint on March 28, 2024 in response [Doc. 22.] Thereafter, on April 9th, 2024, Defendants filed the instant Motion. [Doc. 23.]

## BACKGROUND OF DEFENDANT'S MOTION
## FOR A GAG ORDER

The Motion seeks an Order preventing both Gertie Siegel and any attorney that works for her from making any "extra judicial statements" that "will have a substantial likelihood of materially

prejudicing an adjudicative proceeding in the matter." [Doc. 24 page 3.] In other words, Defendants seek to limit prospective speech through a federal gag order that restricts Gertie or any attorney who might represent her from commenting to the media and other third parties regarding "the instant lawsuit and allegations" against Defendants. [Doc. 24, Page 4].

Defendants allege Gertie and her attorneys waited to file certain documents to maximize media attention, including the filing of her complaint one week after an "unrelated incident." [Doc. 24 page 2].[1] This "unrelated incident" – a characterization Gertie vehemently disputes – is the tragic occurrence when legal authorities found a 12-year-old boy, CJH, dead, cold, and stiff in Trails Carolina's care and custody in February 2024. The autopsy of CJH concluded that CJH's death was not natural.[2] CJH's death at Trails Carolina has sparked a state criminal investigation at Trails Carolina for the involuntary manslaughter of CJH that is being aided by the FBI, and CJH's death has finally prompted Trails Carolina's regulator, NCDHHS, to close Trails Carolina's doors.[3] Trails Carolina, through its own failure to comply with regulations and provide the requisite care CJH required to survive a night in its program, has placed itself in the center of a longstanding, nationwide conversation about the need for legislation and reform to ameliorate the systemic abuse

---

[1] It is incredible that Defendants ask this court to believe that Gertie and her legal counsel were lying in wait for CJH to die in Trails Carolina's custody before filing her lawsuit; Defendants mistakenly attribute a prophetic level of prescient knowledge to Gertie and her legal counsel.

[2] **Ex. A**, "Boy's Death at Therapy Program Didn't Appear Natural, but Sheriff Says They're Awaiting Cause," AP News, Feb. 8, 2024 (online advertisements redacted).

[3] **Ex. B**, "Warrant: 12-year-old Boy Found Cold, Stiff at Wilderness Camp,' WBRC Fox News, Feb. 13, 2024 (online advertisements redacted); **Ex. C**, Search Warrant dated February 7, 2024; **Ex. D**, "NC DHHS to Revoke Trails Carolina's License," WBTV News, March 28, 2024 (online advertisements redacted). Video of news coverage and report, which cannot be uploaded to the court's online filing system, is available online at https://www.wbtv.com/2024/03/28/nc-dhhs-revoke-trails-carolinas-license/

and neglect children face in the facilities and programs that comprise America's "troubled teen" industry. A small fraction of this conversation is provided as Exhibits to this Motion in order for the Court to have a baseline context of the public discussion in which Trails Carolina now seeks a prospective gag order against Gertie and any attorney who might represent her.[4]

### 1. The Public Interest in the Operations of Trails Carolina.

Since 2010, the State of North Carolina has invested public resources in its efforts to investigate and correct the Trails Carolina's abuse and neglect of the children in its custody and care. On March 4, 2010, NCDHHS cited Trails Carolina for violating North Carolina law and failing to ensure numerous allegations of abuse were reported. On March 23, 2010, NCDHHS wrote Graham Shannonhouse, then Trails Carolina's Executive Director, that it required a Plan of Correction from Trails Carolina regarding its violation of 10A NCAC 27D .0304 and its harm, abuse and neglect of a child. On April 6, 2010, Trails Carolina assured NCDHHS that its staff had

---

[4] See, e.g., **Ex. E**, NCDHHS Survey dated March 31, 2024, and Trails Carolina's Plan of Correction dated April 4, 2024; **Ex. F**, United States Government Accountability Office Report dated April 24, 2008; **Ex. G**, " 'It's beyond cruel': Inside an N.C. Wilderness Therapy Program for Teens," WBTV CBS News, May 24, 2021 (online advertisements redacted); **Ex. H**, "State laws aim to regulate 'Troubled Teen Industry,' but Loopholes Remain," USA Today, Jan. 19, 2022; **Ex. I**, "Wilderness Therapy has Left People Terrified, Traumatized. What is It?" USA Today, Dec. 8, 2022; **Ex. J**. When Private Industry Meets Public Policy: Navigating the Complexities of State and Federal Regulation within the Troubled Teen Industry." Seton Hall Law, 2023); **Ex. K**, Paris Hilton on X, Feb. 16, 2024 (directing her followers on the social media platform to tis article: https://www.themirror.com/news/us-news/chilling-details-emerge-boy-12-336258?utm_source=twitter.com&utm_medium=social&utm_campaign=sharebar); **Ex. L**, "'Where the Hell am I?: Former Campers Describe Harsh Introduction to Trails Carolina," NBC News, Mar. 8, 2024 (online advertisements redacted); **Ex. M**, "The Deaths at Trails Carolina," Renee Roberson, Mar. 19, 2024; Content of Renee Roberson's audio podcast, which cannot be uploaded to the court's online filing system, is available online at https://soundcloud.com/user-362329037/episode-88-the-deaths-at-trails-carolina; **Ex. N**, "North Carolina Moves to Revoke License of Wilderness Camp where a 12-Year-Old Died," NBC News, Mar. 28, 2024 (online advertisements redacted); **Ex. O**, "Paris Hilton Testifying Today in Sacramento for Bill Aimed at 'Troubled Teen Industry," LA Times, Apr. 4, 2024 (online advertisements redacted).

received training in response, that Trails Carolina had formed a Quality Assurance Committee, and that all allegations of abuse would be reported to the appropriate channels.[5]

However, in November 2014, Trails Carolina became the subject of significant media coverage when Alec Lansing died while he was child enrolled in Trails Carolina's camp.[6] In response to the circumstances surrounding Alec's death, NCDHHS again cited Trails Carolina for the harm, abuse and neglect because of what Alec Lansing suffered at Trials Carolina. On March 23, 2015, NCDHHS assessed a $12,000.00 administrative penalty against Trails Carolina for the harm, abuse and neglect of Alex Lansing.[7] In its Plan of Correction, Trails Carolina assured NCDHHS it had adopted a policy to notify law enforcement officers within two hours of a child going missing. NCDHHS continued to perform surveys at Trails Carolina and issues citations for its deficiencies, which is a matter of public record.

On March 11, 2021, following years of surveys by NCDHHS citing Trails Carolina for medication administration errors, misuse of restraints, clinical assessment and care planning failures, staff training issues, emergency response failures, and other concerns, and the Senate Chamber of the North Carolina General Assembly Senate sent a formal inquiry to Trails Carolina. The General Assembly required Trails Carolina to provide it substantive responses about the amount of time it actually spent having licensed clinicians treat students; its criteria and training for field guides; the provision of water and medicine to children; its emergency response protocols;

---

[5] **Ex. P**, NC DHHS Survey dated March 4, 200, and Trails Carolina's Plan of Correction dated April 6, 2010; **Ex. Q**, Letter from NC DHHS to Trails Carolina dated March 23, 2010.

[6] **Ex. R,** "Body of Teen from Local Camp Found – Brevard, NC," Transylvania Times, Nov. 26, 2014.

[7] **Ex. S**. NC DHHS Survey dated Feb. 4, 2015, and Trails Carolina's unsigned Plan of Correction; **Ex. T**, Letter from NC DHHS to Trails Carolina dated Mar. 23, 2015.

and children's ability to have unmonitored communications with their families, among other things.[8]

### 2. The Overwhelming Public Sentiment of a "Desperate Need for Reform."

CJH's death is a tragic occurrence that caps more than fifteen years of trauma suffered by children at Trails Carolina as demonstrated by the public record. The public interest in CJH's death and the "troubled teen industry" has caused Trails Carolina to become the object of media attention internationally.[9] As the exhibits to this motion illustrate, there are countless voices raising concern about Trails Carolina's practices and the for-profit industry in which it operates. Gertie Siegel has long contributed her voice to this conversation; since 2022, her Tik Tok Channel, @This.is.me.surviving2,[10] has obtained over 16,800 followers, and some of her posts have over a million views by the public.

However, Gertie and the voice of her lawyer, Jenkins Mann - whose niece Clara Mann filed a lawsuit detailing her abuse and neglect at Trails Carolina in this court last year [11] - are just two voices amongst the throng that are contributing to the public discussion illustrated by the exhibits to this motion and Defendants' memorandum, including: The US Government Accountability Office; NC DHHS; the Transylvania County Sheriff's Office; the North Carolina General Assembly; other state legislatures across the country; legal writers and investigative

---

[8] **Ex. U**, NC State Senate Letter to Trails Carolina on March 11, 2021.

[9] See, e., **Ex. V**, "REVEALED: NC 'Wellness' Camp where Boy, 12, Died is a 'Cruel' Boot Camp for Troubled Youths and Charges Parents $10k-a-month as Counselors Swear at Kids and Refuse to Let Them Shower – as It Emerges Another Child Died from Hypothermia while 'Running Away,'" Daily Mail, Feb. 8, 2024; online video content in article, w which cannot be uploaded to the court's online filing system, is available online at
https://www.youtube.com/watch?v=n2uoTUBKvjo&t=27s;

[10] Gertie's Tik Tok page referenced is online at https://www.tiktok.com/@this.is.me.surviving2

[11] C/A No. 1:23-cv-00020.

reporters for the AP, NBS, CBS, Fox News, News Nation, NPR, the LA Times, USA Today, the UK Daily Mail, and many others, such as Nick Ochsner, Elizabeth Chuck, Tyler Kingkade, Cameron Evans, Sara M. Moniusko, Nancy Grace, Elizabeth Vargas, Felicia Sonmez, Brittany Whitehead, Stepheny Price, and Grace Vitaglione; child advocacy leaders like Meg Appelgate, CEO of the non-profit Unsilenced, and Bobby Cook, executive director of the non-profit Breaking Code Silence; podcasters like Renee Roberson; celebrities like Paris Hilton; former Trails Carolina employees and whistleblowers like Jonathan Hyde, Andrew Kerbs, and those who have asked to remain anonymous; former Trails Carolina victims like Kathleen Riley, Caroline Svarre, Clara Mann, Rebecca Burney, Zoe Aridas, Vic Mitterando, Lily, and those who have asked to remain anonymous; parents of former Trails Carolina victims, like David Bloom; clinical providers, like Dr. Bethany Marshall; the 788 people who have, in the past 8 days, signed the petition to keep Trails Carolina closed forever; [12] and the thousands of victims who have raised their voice within the troubled teen community online and in social media groups.[13]

For its part, Trails Carolina has an established track record of issuing public media statements regarding its industry, its regulation, its practices, its policies, the harm to its students, the care it provides its "students," and the need for reform in its industry.[14] Trails Carolina insists that it should have a seat at the table in discussing the reforms that are needed in the troubled teen industry. On August 3, 2023, Trails Carolina acknowledged it operates in for profit industry that

---

[12] See online petition at https://www.change.org/p/after-two-child-deaths-close-the-trails-carolina-youth-program-forever-591bcbe9-3a58-49cf-977a-b8ecb5dc8833

[13] See, e.g., https://www.reddit.com/r/troubledteens/.

[14] A list of links to Trails Carolina's press releases in 2023, for example, is located at https://www.einpresswire.com/newsroom/trails_carolina/

is a "stain on humanity's history" and has "a desperate need for reform".[15] Trails contends it is

distinct from those providers that created the "terrible history" of the troubled teen industry

because it follows a "therapeutic approach," providing "a full team of licensed therapists and

experienced and trained wilderness instructors" to its "students." Id. Trails Carolina's founder

Graham Shannonhouse is quoted in this press release as saying: "Trails Carolina and other program

leaders should be key stakeholders in federal and state decision-making, engaging with parents

and legislators to make substantial improvements in the industry." Id. Gertie and her counsel

believe that this is a form of gaslighting which is dangerous to the public.

### 3. Trails Carolina's Ongoing Media Releases During the Criminal Investigation into the Death of CJH.

On February 6, 2024, Trails Carolina falsely informed the public that it was "cooperating

fully with investigators," while it stated it understood the "need and value of keeping the public

informed." It also continued to tout the merits of its program, its licensure, and its accreditations:

> Trails Carolina is a licensed, accredited, and underlined outcome-driven nature-based therapy
> program. . . Trails Carolina pairs psychological counseling with a variety of outdoor
> activities, including hiking, backpacking, camping, rock climbing and equine-
> assisted emotional work.. . . . [t]he program was founded in 2008 and licensed by
> the North Carolina Department of Health and Human Services and accredited by
> The Association of Experiential Education, the Commission on Accreditation of
> Rehabilitation Facilities, and COGNIA for academic excellence.[16]

(emphasis in original). On February 8, 2024, Trails Carolina issued a false or misleading public

statement in response to the Transylvania County Sherriff's Office's criminal investigation:

> The Transylvania County Sheriff's Office press release distributed to the media on
> February 7, 2024 does not present an accurate account of the facts nor the current state of
> the investigation. Here are the facts…. Our staff have fully cooperated with the local law
> enforcement's investigation. … Any assertion to the contrary is false, reckless, and

---

[15] **Ex. W**, "Deep Seated Issues in the Troubled Teen Industry: Trails Carolina's Role and a Call to Action

[16] **Ex. X**, Trails Carolina Media Statement Releases on Feb. 6, 2024, and Feb. 8, 2024.

defamatory. … Trails has conducted an internal investigation of this incident, and the Trails facility has been investigated by outside professionals who are subject-matter experts. Both investigations have concluded there is no evidence that Trails failed to properly supervise, no evidence that Trails caused harm, and no evidence that conditions at Trails were unsafe or unhealthy.

On February 16, 2024, Trails Carolina released a press statement in the middle of the NC DHHS and criminal investigation calling the actions of NCDHHS "negligent and reckless" and calling the actions of the Transylvania County Sheriff's Office "illegal" and "biased."[17] Trails Carolina's media statement, in part, stated the following false and misleading statements:

DHHS threatened and intimated parents by demanding parents travel from all over the country to pick up their children or DHHS would take their children into custody. The children were receiving high-level clinical care for complex mental health diagnosis required experienced professionals with full knowledge of critical medications and specialized treatment regiments. … Parents believe the program is safe and do not want their children's treatment disrupted by the State, which has continued to make reckless decisions based on false and misleading information from the Transylvania County Sheriff's Office. …The Transylvania County Sherriff's Office has maintained a biased approach in what appears to be an attempt to close a program that has successfully treated and helped restore and heal more than 2,700 families' and saved lives." ... The Sheriff and DHHS likely did not have the evidence to close the program and take its license through appropriate and generally accepted judicial review. Calling and intimidating parents to pick up their children was an attempt to achieve their nefarious goal while avoiding fair and appropriate due process with full factual disclosures.

On March 28, 2023, in response to the announcement that NCDHHS plans to revoke Trails Carolina's license and following an $18,000 fine NCDHHS levied against Trails Carolina for the abuse and neglect of CJH, Trails Carolina released another false and misleading media statement.[18] Trails Carolina stated:

More than 2,500 children and families have benefited from Trails and we will continue cooperating with the state to satisfy their concerns so we can continue providing compassionate quality care to kids and families for whom every other

---

[17] **Ex. Y**, Trails Carolina Media Statement dated Feb. 16, 2024.

[18] **Ex. Z**, "State Threatens to Revoke License for Trails Carolina Wilderness Therapy Program after Camper's Death," WFAE NPR News, Mar. 28, 2024.

treatment option has failed .... We understand the situation's immense media pressure and the impact such pressure has on state agencies doing their best to serve the public and act in the best interest of children and their families.

**4.      The Four Statements by Jenkins M. Mann, Esq., that Prompted this Motion.**

Defendants' memorandum in support of their motion contends that Mr. Mann has made "the following inflammatory and impermissible statements."

> (1) that alleged that the Trails Carolina program was "designed to humiliate you"; (2) the program was not real therapy; (3) that the program operated under a cloak of secrecy with no regulation or oversight; and (4) that he had spoken with ten other girls alleging that they experienced sexual abuse while enrollment in the program.

[Doc. 24, p. 2.] Further, Defendant's memorandum provides: "Plaintiff alleged that the program did not provide legitimate therapy and that other students were sexually assaulted at the program." Id.

Defendants' memorandum describes two news interviews involving Mr. Mann and others as the factual support for the gag order they seek. The first is an interview of Gertie, Mr. Mann, and others on a YouTube show hosted by Nancy Grace on March 8, 2024. In that episode, the conversation examined the death of CJH, the "troubled teen" industry, and the history of allegations and claims against Trails Carolina. In addition to Gertie and Mr. Mann, Ms. Grace interviewed Dr. Bethany Marshall, a Psychoanalyst, Marriage and Family Therapist; Dr. Todd Barr, a Board Certified Anatomic Clinical and Forensic Pathologist; Nick Ochsner, the Chief Investigative Reporter for WBTV; Eric Davis, private investigator and retired FBI agent; and Meg Applegate, the CEO of the advocacy nonprofit Unsilenced.

About fifteen minutes into the Nancy Grace interview, Gertie summarized her time at Trails Carolina, which is outlined in her Complaint, and which is part of the public record. Gertie stated: "From what I experienced with that therapist I would not call it legitimate therapy." A few

moments later, Mr. Mann made the following statement:

> That is unfortunately epidemic in the conversations we've had with several multiple Trails survivors. Gertie's was the second lawsuit I filed with almost the identical fact pattern to the first lawsuit I filed which was my niece - *I've probably had ten conversations since then with various girls who have had an experience so similar its eerie*.
>
> *These camps* are designed to humiliate you, what Gertie's not telling you is that not only is she strip searched the moment she gets there and but she is forced to squat and cough while naked in front of 21 year old field staff that have no counseling training whatsoever. These are just kids who get a little training on the job there and who are in no way counselors are watching these girls and boys squat and cough naked and it just goes from there. *The camps* are designed to humiliate you to break you down and take you to your lowest and then in some sick perverse way hoping to build you back up better and stronger but again without any real therapy or any real guidance to do any of that.

(Emphasis added). After this statement, Dr. Marshall states the following:

> Nancy, if I could interject, in a proper psychiatric facility the initial session is with a psychiatrist where the child is evaluated psychiatrically. When they're admitted every child has their own room, there are lights in the hallway, nurses in white uniforms check all night long, the only time they are with other kids is when they are doing some recreation or in group therapy-that's it. And then other professionals are coming in all the time making notes in their chart. This is such a deviation from that and such a culture of abuse.

During the show, Dr. Barr stated that there appeared to be inconsistencies in what Trails Carolina reported regarding staff checking CJH at 12:00 a.m., 3:00 a.m. and 6:00 a.m. because CJH's body of was cold and stiff, meaning the body had been deceased between 8-12 hours, and that rigor mortis could not have occurred in the short time between 6:01 a.m. and an hour and forty five minutes later at 7:45 a.m., when the body was discovered. Later on the show, Mr. Mann stated:

> … Unfortunately as horrific as all of this is, we shouldn't and can't be surprised by any of it. It's exactly what they did with Alec Lansing when they waited all those hours to contact the police. North Carolina is a mandatory reporter state and neither Gertie's instance nor Clara's instance nor any instance that I'm able to find have they reported any of the sexual abuse that occurred to these

girls these children at the camp. We shouldn't be at all surprised unfortunately that they clearly waited a period of hours and hours and hours before reporting what happened to CJH and they do it because it's a cloak of secrecy - they have this complete cloak of secrecy where they don't want any regulation they don't want any oversight and they do anything and everything they can to keep what they're doing from light of day.[19]

Nancy Grace asked Gertie whether she believed that she was the only victim of sexual abuse at Trails Carolina; Gertie stated: "I can't speculate as to what happened when I wasn't at Trails, but I do believe the survivors who I've spoken to since I was at Trails, and I believe the other two girls who were assaulted in the same group as me before I was assaulted."

As to the second interview cited by Defendants in its memorandum, Defendants misquote the article and misattribute the words of the article's author to Mr. Mann. The article from the Carolina Public Press actually states:

The lawyer on both cases, **J**enkins Mann, said he hopes the cases and public attention helped put this in motion, because his clients' "driving force" is to expose issues at Trails Carolina.

"I would like to think this is a first step of many that we will be involved in, in efforts to shut down wilderness therapy camps and therapeutic boarding schools that are harmful to children," he said.[20]

**5.** **Mr. Mann's Prior Experience with Trails Carolina in C/A No. 1:23-cv-00020.**

Mr. Mann was an attorney of record in the case filed by his niece, Clara Mann, against Trails Carolina in 2023 due to the unreported sexual abuse she suffered while enrolled at Trails Carolina in 2019. In that action, Mr. Mann witnessed that Trails Carolina repeatedly attempted to shroud nearly every possible fact - its ownership, its business records, its communications with its licensing and accrediting entities, even contact information for witnesses - under a cloak of

---

[20] **Ex. AA**, "DHHS Threatens to Yank License of NC Camp where Child Died in February," Carolina Public Press, April 3, 2024

secrecy. As this court will recall, Trails Carolina refused to publicly file a proper Citizenship Disclosure Statement; moved for an in-camera hearing on the matter or in the alternative, sought a motion to seal; moved to reconsider the Court's order denying the same; and still filed the disclosure with a "Confidential" stamp on it despite this Court's repeated rulings to the contrary.[21]

Similarly, Mr. Mann witnessed that Trails Carolina objected to producing witnesses for deposition or answering almost every discovery request served in that action and repeatedly labeled documents "Confidential" without any legal basis to do so, which: (1) required Clara Mann to file two motions to compel seeking to have Trails Carolina comply with discovery requests; (2) required Clara Mann to seek a contested Qualified Protective Order to get medical records; (3) required hours of court hearing time; (4) required this Court to issue an Order compelling discovery; (5) and resulted in a motion for sanctions for Trails Carolina's refusal to comply with the Court's order, which was still pending when Clara Mann and Trails Carolina resolved that litigation by agreement.[22]

## LEGAL STANDARD/ ANALYSIS

### 1. **Defendant's proposed gag order does not pass First Amendment muster.**

Defendants' brief opens with a citation to Rule 3.6(a) of the North Carolina Rules of Professional Conduct, but the undersigned has found no case in the Fourth Circuit or even in North Carolina State Court that examines Rule 3.6 and whether it may operate to prevent a <u>non-attorney</u> like Gertie from making public comment on pending litigation to the media and other third parties. Defendants certainly do not provide this court with any authority that supports the conclusion that North Carolina Rules of Professional Conduct may be used to issue a gag order.

---

[21] Case 1:23-cv-00020, Doc. Nos. 23, 24, 28, 29, 30, and 34

[22] Case 1:23-cv-00020, Doc. Nos. 39, 39-1, 39-2, 39-3, 39-4, 40, 40-1, 40-2, 49, 49-1, 55, 56, 56-1, 56-2, 56-3, 56-4, and 56-5.

Fundamentally, Defendants completely ignore the legal analysis that this court must undertake when asked to issue a gag order. This court's analysis must begin with an examination of the First Amendment. "Even among First Amendment claims, gag orders warrant a most rigorous form of review because they rest at the intersection of two disfavored forms of expressive limitations: prior restraints and content-based restrictions." In re Murphy-Brown, LLC, 907 F.3d 788, 796-797, (4th Cir. 2018). Gag orders are both a content-based restriction on free speech and a prior restraint on free speech, and as such "bear 'a heavy presumption against [their] constitutional validity." Id. citing (Bantam Books, Inc. v. Sullivan, 372 US. 58, 70 (1963)). In light of these twin presumptions of unconstitutionality, a gag order must first "serve a 'compelling' public interest;" and second, it must further that interest in the "'least restrictive means.'" In re Murphy-Brown, 907 F.3d at 797, 797 (citing Reed v. Town of Gilbert, 575 U.S. 155 (2015) and Ashcroft v. ACLU, 535. U.S. 564 (2002)). Moreover, "a gag order may issue only if there is a likelihood that 'publicity, unchecked, would so distort the views of potential jurors that [enough] could not be found who would, under proper instructions, fulfill their sworn duty to render a just verdict exclusively on the evidence presented in open court. In re Murphy-Brown, 907 F.3d at 797-798 (citations omitted).

Certainly our system of justice has a compelling public interest in requiring civil litigants be assured the right to a fair trial. Hirschkop v. Snead, 594 F.2d 356, 373 (4th Cir. 1979). However, ensuring the right to a fair trial is a compelling interest "only when there is a 'reasonable likelihood' that a party would be denied a fair trial without the order under challenge. In re Murphy-Brown, 907 F.2d at 797 (citations omitted) (emphasis added). "Further and crucially, a gag order must actually 'operate to prevent the threatened danger'" because in some cases, the

"inevitability of publicity surrounding civil proceedings will render a gag order superfluous." Id. at 798 (citations omitted).

In the present case, with the immense amount of media coverage regarding Trails Carolina being shut down permanently due to the death of another child in its care, Defendants have utterly failed to present sufficient evidence that anything Gertie or her lawyers could say would deny its right to a fair trial in the Western District of North Carolina. First, two of the four statements about which Defendants complain have nothing to do with Gertie's actual lawsuit or any prospective trial (and, as discussed in Section 2 below, the statements are all permitted under the portions of the North Carolina Ethics Rule 3.6 that Defendants chose not to put in their memorandum). Specifically, Mr. Mann's actual quote regarding the humiliation children suffer in wilderness therapy programs was spoken regarding wilderness camps in general and reflects one of the most consistent and fundamental public criticisms of the "troubled teen industry." Likewise, Mr. Mann's reference to Trails Carolina's "cloak of secrecy" was discussing his experience in his niece's lawsuit and the news reports that Trails Carolina has refused to cooperate with the criminal investigation in the death of CJH.[23]

Second, Defendants are simply asking the court to assume that all future statements made by either Gertie or any of her counsel are reasonably likely to deny Trails Carolina a fair trial. There is no basis in the record for this court to leap to such an extreme conclusion and deprive Gerie and any of her attorneys of their rights under the First Amendment. To the contrary, there is every reason for this court to conclude that there is no real risk imposed by future statements given the fact that the media and the public discourse and focus is centered on the facts that Trails

---

[23] **Ex. BB**, "Sheriff: Camp not Fully Cooperating after Apparent 'Suspicious' Death of 12-year-old," Feb. 7, 2024 (online advertisements redacted).

Carolina has caused two children to die in its custody in ten years, is under investigation for the involuntary manslaughter of CJH, and is prohibited from accepting any "students" after a public dispute with The State of North Carolina. Trails Carolina has countless former staff and "students" discussing the various dangerous, even "lethal" conditions at Trails Carolina with the media and on social media,[24] and medical professionals like Dr. Bethany Marshall and media figures like Elizabeth Vargas alike are stating that Trails Carolina's practice of conducting one therapy session a week for children does not sound anything like real therapy.[25]

Most tellingly, even Trails Carolina's own media statements show that there is a "desperate need for reform" and that Trails Carolina's industry needs, "substantial improvements." The public agrees, and thousands wish to see this industry shuttered by regulators who allow it to exist.[26] In the context of all this public information, there is no 'reasonable likelihood' that the future speech of Gertie or her counsel would deny Trails Carolina a fair trial. Such a gag order would be superfluous.

---

[24] **Ex. CC**, "Former Staffer at North Carolina Therapy Camp says Troubled Kids, Inexperienced Staff is 'Lethal Combination," Fox News, Feb. 22, 2024; **Ex. DD**, "'Shame on you.' Former Participants weigh in on NC Wilderness Camp," WBTV News, Feb. 22, 2024.

[25] The News Nation Interview between Vic Mitterando and Elizabeth Vargas is available online at: https://www.newsnationnow.com/video/theyre-hurting-children-trails-carolina-camper-reflects-on-abuse-after-death-vargas-reports/9507492/

[26] See the common social media forums online, such as:
- https://www.reddit.com/r/troubledteens/comments/imgo1r/my_trails_carolina_story/;
- https://www.reddit.com/r/troubledteens/comments/16mkves/7_years_after_being_sent_to_trails_carolina_i_no/;
- https://www.reddit.com/r/troubledteens/comments/ai5ddx/i_went_to_a_wilderness_program_and_it_has_made_my/
- https://www.tiktok.com/@clairestoptalking0/video/7337448853106461995;
- https://www.tiktok.com/@katykat5431/photo/7279876298795765023;
- https://www.tiktok.com/@audrey.leighb/video/7022352062407134470

This is not a like a criminal case where a prosecutor's comments may affect the jury pool who will sit in judgment of the crime. This is, instead, a public discourse about a regulated industry that even Trails Carolina concedes needs to be reformed by the parents, federal and state regulators, and other stakeholders affected by it. In the context of a hotly disputed public question, the Fourth Circuit has stated:

> It is anything but clear that this gag order would accomplish its intended purpose of reducing risks to fair trial rights. … Amici identified a torrent of potentially prejudicial news coverage released after the gag order had taken effect. … Recent news coverage included florid characterizations of farmers and hog farms, discussions of excluded testimony from an odor expert, and attacks on the attorneys at trial. … It is simply not clear why this gag order would not work selective and uneven impositions. Those could prove even less desirable than a fuller and more balanced airing of the viewpoints surrounding the hotly disputed question of the benefits and problems that hog farming has brought to eastern North Carolina.

In re Murphy-Brown, 907 F.3d at 798-799. As the Fourth Circuit noted, "the fact of publicity is hardly dispositive. Publicity often accompanies trials, including trials in which the public has a keen and understandable interest." Id. at 799. Simply put, Defendants' request of a gag order cannot survive First Amendment scrutiny, as Defendants have failed to demonstrate any reasonable likelihood that it would be denied a fair trial in the absence of a gag order.

Even if Defendants had established a compelling interest under the First Amendment, they have failed to show how the gag order would be the least restrictive means of furthering that interest. Defendants seek a broad order seeking both Gertie and any of her counsel from speaking to the media or any other third parties "regarding the instant lawsuit and allegations." [Doc 24, p. 3.] Defendants have not clarified what is meant by "third parties" – as they have also not clarified what "allegations" Plaintiff and her counsel would be prohibited from discussing. This overly broad gag order sought by Defendants is too vague and is not narrowly tailored to what would be essential to the preservation of the preservation of a fair trial. In re Murphy-Brown, 907 F.3d at

799-800. (finding a gag order was not narrowly tailored because it "treated lawyers no differently from parties…applied blanket restrictions to more than twenty cases that will be tried over a period of years.").

2. **Rule 3.6 of the North Carolina Rules of Professional Conduct is of no avail to the Defendants, who failed to provide or discuss section (b) or (c) in their Memorandum.**

Rule 3.6 of the North Carolina Rules of Professional Conduct on Trial Publicity provides:

> (a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and *will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.*
>
> (b) Notwithstanding paragraph (a), a *lawyer may state*:
>
> (1) *the claim, offense or defense involved* and, except when prohibited by law, the identity of the persons involved;
>
> (2) the *information contained in a public record*;
>
> (3) that an investigation of a matter is in progress;
>
> (4) the scheduling or result of any step in litigation;
>
> (5) a request for assistance in obtaining evidence and information necessary thereto;
>
> (6) a *warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest*;
>
> …
>
> (c) Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph shall be limited to such information as is reasonably necessary to mitigate the recent adverse publicity….

(Emphasis added). The Comment to the rule provides that in determining prejudice, a factor to consider is the "nature of the proceeding involved. Criminal jury trials will be most sensitive to extrajudicial speech. Civil trials may be less sensitive. (Comment 6 to Rule 3.6). The Comment also provides that extrajudicial statements "that might otherwise raise a question under this Rule may be permissible when they are made in response to statements made publicly by another party, another party's lawyer or third persons, where a reasonable lawyer would believe a public response is required in order to avoid prejudice to the lawyer's client." (Comment 7 to Rule 3.6).

To reiterate: there is not a single Fourth Circuit case nor North Carolina state court case that the undersigned can locate – or that Defendants have provided this court – that examines Rule 3.6 and whether it serve as a basis for a state or federal court to issue a gag order. Generally, rules of professional responsibility are enforced by state bars and their challenge in the federal system arises from a lawyer asserting a constitutional challenge to the state rule.[27] However, assuming *arguendo* that Rule 3.6 does have some applicability in this Motion, it certainly does not extend to Gertie, who is a non-lawyer.

Rule 3.6(a) prohibits extrajudicial statements that are (1) disseminated by means of public communication *and* (2) that will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter. As discussed above, due to sheer volume of national commentary involving Trails Carolina, nothing Mr. Mann has said could have has a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

Additionally, any statements made by Plaintiff's counsel would fall under the exception of Rule 3.6(b)(1), (2), and (6), because he was referencing matters included in the public record in

---

[27] Even the case cited by Defendants in its brief, <u>Hirschkop v. Snead</u>, 595 F.2d 356 (4th Cir. 1979), arose in the context of a lawyer challenging the constitutionality, on First Amendment grounds, a Virgina Professional Responsibility Rule that prohibited attorney comments on all pending legal matters.

Case 1:23-cv-00020, in Gertie's Initial Complaint in this action, in NCDHHS documentation; and

he statements were intended to serve as a public warning of the real risk Trails Carolina poses to

the children - like his niece Clara Mann - who are sent to Trails Carolina without adequate

information. Specifically, Gertie's initial Complaint stated:

> Upon information and belief, some of the children at Trails Carolina have histories of sexual abuse and/or sexual misconduct. However, sexual abuse and/or sexual misconduct are not listed in any of Trails Carolina's marketing materials or its website; this risk, known to Defendants, are intentionally omitted from the marketing and advertising Trails Carolina publishes to the public or the intake materials and disclosures provided to parents, such as Gertie's parents.

> Upon information and belief, Trails Carolina conceals incidents of physical neglect, child deprivation, injury, and sexual assault and battery between children from the public, including Plaintiff and her family, for the deceptive purpose of lulling parents into a false sense of security when entrusting their children to Trails Carolina's exclusive custody and care.

> Rather, Trails Carolina attempts to mask events where children in its care are injured behind confidentiality agreements, and it fails to report events to the North Carolina Department of Health and Human Services, Trails Carolina, LLC's licensing regulator, even when faced with reasonable cause to suspect abuse or neglect has occurred in its program.

> Instead, Trails Carolina boasts, "Your daughter will work with other girls of similar ages who face similar challenges," leading parents to believe the group the child is placed in will have similar mental health or behavioral challenges.

> Upon information and belief, Trails Carolina, by and through its owners, officers, managers, employees and agents, have known for years that some of the children have sexually assaulted and battered other children at Trial Carolina. Trails Carolina knew or should have known the dangers particular children presented to others, such as Gertie. However, Trails Carolina ignored that danger and permitted children with aggressive sexual urges to exploit other children, like Gerties despite Trails Carolina's actual and constructive knowledge that these events are occurring.

> Upon information and belief, Trails Carolina knew or should have known that:

> (a) Putting children with histories of sexual abuse and/or sexual misconduct into yurts or tents where other children were forced to sleep alongside them provides children with aggressive sexual urges with access to vulnerable children in secluded and poorly supervised settings;

> (b) Trails Carolina conditions the children to adhere to the practice of strict obedience of its employees, and encourages an environment of "breaking down" the children,

creating an environment of fear and silence, which creates an environment that fails to protect children from those with aggressive sexual urges.

(c) Trails Carolina promotes the ideas of strict compliance, of not letting the children know each other's or field staff's last names and of not "rocking the boat," and of specifically shaming victims to not tell others what happened and blaming victims for events that occurred, all of which help facilitate a culture that keeps young victims silent and compliant and fosters an environment for sexual assault.

Upon information and belief, Defendants knew or should have known that if they advised parents of past incidents of assault, battery, and sexual misconduct, parents would not trust them with their children's exclusive custody and care, costing Trails Carolina the profit for which it operates.

Defendants fail to disclose to parents how little counseling children in their care receive with a licensed therapist, which is, upon information and belief, an hour or less per week. Instead, Defendants rely field staff, who are only required to be 21 years old and possess a GED, to "carry out" "individualized" therapeutic treatment plans.

[Doc. No. 1, pp. 8, ¶ 27 – p. 11, ¶ 30.] Each of the four statements made by Mr. Mann reflect the claims asserted in Gertie's Complaint, which is consistent with the Complaint and other public records filed in Case 1:23-cv-00020 before this Court. Moreover, Mr. Mann's statements were appropriate in light of his genuinely held belief that Wilderness Camps, like Trails Carolina, pose substantial harm to an individual or to the public interest based on his experience with his niece and his communications with other victims of unreported sexual abuse at Trails Carolina.

Finally, Mr. Mann's statements are appropriate under Rule 3.6(c) because he was responding and refuting the narrative Trails Carolina is putting forth in its press releases of February 6, 2024, February 8, 2024, and February 16, 2024, and through its website, www.trailscarolina.com.[28] Trails Carolina set out to disparaging state regulators and police, who will be witnesses in this action, while mischaracterizing its track record by falsely claiming it has "successfully treated and helped restore and heal more than 2,700 families…." Mr. Mann was well

---

[28] For example, see https://trailscarolina.com/accreditations-and-memberships, which bears the NCDHHS logo and falsely states that Trails Carolina is currently "registered and accredited with the state to provide service" by NCDHHS and "upholds all of our licensure agreements."

within the scope of response permitted under Rule 3.6 when he made statements rebutting the misleading propaganda Trails Carolina has released to the media and the public since the death of CJH and the filing of Gertie's lawsuit.

## **CONCLUSION**

Defendants' Motion is, quite literally, without precedent, and it lacks any merit. Based on the foregoing, Gertie respectfully asks that this court deny Defendants' efforts to gag her or her attorneys from exercising their First Amendment rights while Defendants continue to issue misleading propaganda to the media and maintain marketing efforts that contain demonstrably false representations to the public.

s/Shaun C. Blake
Shaun C. Blake (N.C. Bar #35819)
Attorney for Plaintiff
ROGERS LEWIS JACKSON & MANN LLC
1901 Main Street, Suite 1200
Columbia, SC 29201
Tel: (803) 256-1268
Fax: 803-252-3653
Email: sblake@rogerslewis.com

April  23, 2024