UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:24-CV-00046-MOC-WCM

| | |
|---|---|
| Gertrude A. Siegel,<br><br>          Plaintiff,<br><br>v.<br><br>Trails Carolina, LLC, Wilderness Training &<br>Consulting, LLC, and Derry C. O'Kane,<br><br>          Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF PLAINITFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER** |

Plaintiff ("Gertie") submits this memorandum in opposition to Defendants' Motion for Protective Order [Doc. 42] (the "Motion"). For the reasons set forth below, Gertie respectfully requests that the Motion be promptly denied so as to avoid further undue delay.

**A. Background of Motion.**

On March 28, 2024, Gertie filed an Amended Complaint in response to Defendants' Amended Answer and the announcement by the North Carolina Department of Health and Human Services ("NC DHHS") that it was finally closing Trails Carolina. [Doc. 22]. On April 9, 2024, Defendants filed a Motion for Order Prohibiting Extrajudicial Statements attempting to gag Gertie and her attorneys from all extrajudicial statements, and on April 10, 2024, Defendants filed a Motion to Strike and a Motion to Dismiss attempting to delete broad swaths of Gertie's Amended Complaint. [Docs. 30, 31, 32].

Then, prior to Gertie conducting any depositions, Defendants filed their first Motion for Protection Order, which is part of Defendants' ongoing effort to: (1) redefine Gertie's lawsuit in the manner that best suits Defendants' agenda; (2) seeking to prevent Gertie from conducting discovery into Defendants' persistent, repeated acts of negligence that illustrate the corporate negligence of Trails Carolina, LLC and Wilderness Training & Consulting, LLC, that provide the

Case 1:24-cv-00046-MOC-WCM Document 46 Filed 06/04/24 Page 1 of 21

corporate ratification of negligence by Trails Carolina, LLC and Wilderness Training & Consulting, LLC; and (3) that demonstrate the level of wantonness required by N.C. Gen. Stat. § 1D-15.

This instant Motion for Protective Order is the next phase of Defendants' effort to decide what is relevant to Gertie's claim as Defendants redefine it, prevent Gertie's counsel from conducting reasonable discovery, and prevent Gertie or the expert witnesses she intends to offer from seeking or speaking the truth.

Given the tight deadlines in the Court's case management order, Gertie cannot delay conducting discovery while Defendants' many motions are pending. Despite Defendants' continued efforts to derail discovery with specious motions and opposition to a reasonable QPO, Gertie conducted the depositions of Jeniveve Rollins, a former Clinical Director for Trails Carolina, on May 20, 2024, and Jeremy Whitworth, its then-current Executive Director, on May 28, 2024.

In the instant Motion, Defendants seek to delay the production of documents Gertie seeks so she can continue to take depositions and provide evidence to her expert witnesses for the reports that are due in less than two months under the current Case Management Order. Defendants' objections and claims for protection in the instant Motion are unfounded and utterly unsupported, and the Court should deny the Motion and order that Gertie and her counsel be provided the discovery sought. Out of the abundance of caution, Gertie intends to file a Motion to Compel to seek affirmative relief on the requests that Defendants have addressed in this Motion.

**B.    The Requests for Production are appropriate and Defendants failed to produce an iota of evidence to support of their motion for protective order**.

    **1.    Request for Production #4:**

Gertie's Request for Production #4 [**Ex. A** to this Motion] states as follows:

Pursuant to Fed. R. Civ. P. Rules 26 and 34 (the "Rules"), [Gertie] hereby demands that each Defendant produce the following documents, electronically stored information, and tangible things to the extent that they are in each Defendant's possession, custody or control and as provided by the Rules:

\* \* \*

**Request #4**: Each that you submitted to NCDSS, Transylvania County DSS, or Transylvania County Sheriff's Office, or the North Carolina Health Care Registry reporting any allegation of abuse or neglect between March 3, 2010 to April 26, 2024, including each 24-hour and 5-day report.

On May 28, 2024, Defendants provided the following Response [**Ex. B** to this Motion] and filed the instant Motion:

**RESPONSE**: Objection. Defendants object to this Request on the basis that it is overly broad, unduly burdensome, and not limited in time and scope to lead to the discovery of admissible evidence. Defendants further submit that they will be submitting a Motion for Protective Order on the documentation sought by this Request. Subject and without waiving said objections, Defendants did not submit any report to aforementioned entities involving Plaintiff.

As outlined below, Defendants have failed to demonstrate that they are entitled to any protection.

      a.      **Gertie is not seeking any PHI that is outside the scope of the Motion for Qualified Protective Order she submitted prior to Defendants filing this Motion.**

To be very clear - as it appears from Defendants' Motion that this was lost in translation during the Parties' local rule 7.1(b) consultation - Gertie is not seeking any protected health information under 45 C.F.R. 160.103 ("PHI") that is covered by the HIPAA Privacy Rule (45 CFR Part 160 and Subparts A and E of Part 164) and that is not covered by the Qualified Protective Order that Gertie asked this Court to enter prior to Defendants' filing this Motion. [Doc. No. 40.]

45 C.F.R. §164.502(d) of the Privacy Rule permits a covered entity or its business associate to create information that is not individually identifiable by following the de-identification standard and implementation specifications in 45 C.F.R. §164.514(a)-(b). These provisions allow the entity to use and disclose information that neither identifies nor provides a reasonable basis to

identify an individual. 45 C.F.R. 165.512(a) specifically states: "**Health information that does not identify an individual and with respect to which there is no reasonable basis to believe that the information can be used to identify an individual is not individually identifiable health information**." (emphasis added). To the extent that Defendants are claiming that there are individual identifiers of specific children contained within Defendants' submissions to NCDSS, Transylvania County DSS, Transylvania County Sheriff's Office, or the North Carolina Health Care Registry, then Defendants merely need to redact the specified identifiers outlined in the CFR prior to making their production.

Defendants have now consented to the Qualified Protective Order Plaintiff asked this Court to enter on May 23, 2024. [Doc. 40, 45.] To the extent that Defendants have responsive documents that contain PHI that falls outside of that Qualified Protective Order, Defendants should simply produce de-identified copies of those records, which are not subject to any protection under HIPAA's Privacy Rule.

> **b.     Defendants' boilerplate objection is improper and should be disregarded.**

Defendants' boilerplate objection that Request #4 is "overly broad, unduly burdensome, and not limited in time and scope to lead to the discovery of admissible evidence" lacks any merit, and the Court should, respectfully, compel the production of the responsive documents subject to the aforementioned redactions for de-identification of any particular child's personal identifiers.

Boilerplate breadth and burden objections, such as the one employed by Defendant in response to Request #4, are plainly improper under the Federal Rules of Civil Procedure. Fed. R. Civ. P. Rule 34 governs the production of documents and provides that "for each item of category, the response must … specify the grounds for objecting to the request, including the reasons. . . An objection must state whether any responsive materials are being withheld on the basis of that

objection. An objection to part of a request must specify the part, and permit inspection of the rest." Rule 34(B)(C). "Mere recitation of the familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive, and irrelevant'" does not suffice as a specific objection." Mainstreet Collection, Inc. v. Kirkland's, Inc., 270 F.R.D. 238, 240–41 (E.D.N.C. 2010) (citations omitted); see also Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 241 (M.D.N.C. 2010) ("Finally, magistrate judges in at least five district courts in the Fourth Circuit have declared boilerplate objections to discovery requests, including for documents, invalid…The mere recitation of the familiar litany that an interrogatory or document production request is overly broad, burdensome, oppressive and irrelevant will not suffice." (internal quotation marks and citations omitted).

Defendants' boilerplate objection echoes a discovery standard that was disposed of nine (9) years ago. Fed. R. Civ. P. Rule 26(b)'s former standard "has been used by some, incorrectly, to define the scope of discovery." Garey v. James S. Farrin, P.C., No. 1:16cv542, 2019 U.S. Dist. LEXIS 218962, at *26 (M.D.N.C. Dec. 20, 2019) (discussing the Fed. R. Civ. P. 26, advisory committee's notes, 2015 Amendment). "Under the 2015 amendments to Rule 26(b)(1), the question is no longer whether the discovery sought is 'reasonably calculated to lead to the discovery of admissible evidence;' rather, the inquiry is whether the discovery is 'relevant to any party's claim or defense and proportional to the needs of the case.'" Doe v. Cabell Cty. Bd. of Educ., No. 3:21-cv-00031, 2022 U.S. Dist. LEXIS 16887, at *9 (S.D. W. Va. Jan. 31, 2022) (internal quotation omitted).

The failure to specifically and explicitly state the nature of the objection asserted may result in a waiver of that objection. Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc., 200 F.R.D. 255, 258–59 (M.D.N.C. 2001). The court in Drexel specifically found that "[w]hile Fed.R.Civ.P.

34 does not explicitly provide for waiver when objections are not stated, Rule 34(b), like Rule 33(b)(4), requires the reasons for any objections to be explicitly stated. Therefore, the Court finds the waiver to be an implicit one." The <u>Drexel</u> Court went on to explain that:

> "[s]ome courts have previously found that failure to make an explicit timely objection based on privilege waives the objection. <u>Id.</u> § 2213, at 427–28. The Treatise endorses this view, especially in light of the 1993 amendments adding Rule 26(b)(5) which specifically requires a claim of privilege to be expressly made with a description of the documents withheld. <u>Id</u>. The Court agrees and adds that there would be no point to require such a specific and detailed procedure for objections unless it were important to follow it and there were consequences for failure to do so." <u>Id.</u> at 258

In short, Defendants' boilerplate objections of breadth, burden, time, and scope are invalid and improper objections, and this Court has the discretion to deem these objections waived. As such, Defendants cannot prevail on this Motion based on their improper boilerplate objection.

### c. Defendants' boilerplate objection lacks any merit, as Defendants have failed to meet their burden of persuasion by relying solely on conclusory and unsubstantiated allegations in a memorandum.

Even if Defendants' boilerplate objection is entertained by the court, however, this objection lacks any merit. In support of its Motion, Defendants failed to come forward with any support or basis in fact why the request is "overly broad, unduly burdensome, and not limited in time and scope to lead to the discovery of admissible evidence." For example, Defendants have failed to even state that they <u>ever</u> made such <u>any</u> report any allegation of abuse or neglect, much less provide any affidavit or other evidence whereupon this court can conclude that there is an undue burden posed by responding to the request that is disproportionate to Gertie's needs in this case. Defendants' opposition is merely an academic exercise that is void of any effort by Defendants to actually meet their burden to prevail on the motion. The only reasonable conclusion that can be drawn from Defendants' failure to make any effort to comply with their burden under

Rule 26(c) is that this objection and motion is simply interposed for the sake of delay and to interrupt the progression of discovery.

The scope of relevancy in Fed. R. Civ. P. Rule 26(b)(1) is broad. "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." <u>Nallapaty v. Nallapati</u>, 597 F. Supp. 3d 842, 846(E.D.N.C.2022). "The party resisting discovery, not the party seeking discovery, bears the burden of persuasion." <u>Jones v. Bank of Am., N.A.</u>, No. 3:14-cv-11531, 2015 U.S. Dist. LEXIS 52214, at *4 (S.D. W. Va. Apr. 21, 2015) (citing <u>Kinetic Concepts, Inc. v. ConvaTec Inc.</u>, 268 F.R.D. 226, 243-44 (M.D.N.C. 2010)).

For good cause shown under Rule 26(c), the court may restrict or prohibit discovery when necessary to protect a person or party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). To succeed under the "good cause" standard of Rule 26(c), a party resisting discovery on the grounds of burdensomeness and oppression must do more to carry its burden than make conclusory and unsubstantiated allegations. <u>Ovando v. Mountaire Farms, Inc.</u>, No. 7:23-CV-4-M, 2024 U.S. Dist. LEXIS 78905, at *6 (E.D.N.C. Apr. 24, 2024) (quoting <u>Nallapaty</u>, 597 F. Supp. 3d at 846) ("the party seeking the court's protection from responding to discovery 'must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law.'"); <u>Jones</u>, No. 3:14-cv-11531, 2015 U.S. Dist. LEXIS 52214, at *4 (citing <u>Convertino v. United States Department of Justice</u>, 565 F. Supp.2d 10, 14 (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the burden); <u>Cory v. Aztec Steel Building, Inc.</u>, 225 F.R.D. 667, 672 (D. Kan. 2005)

(the party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection); <u>Bank of Mongolia v. M & P Global Financial Services, Inc.</u>, 258 F.R.D. 514, 519 (S.D. Fla.2009) ("A party objecting must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome."); *see also* this court's decision in <u>Lively v. Reed</u>, No. 1:20 CV 119 MOC WCM, 2021 U.S. Dist. LEXIS 267284, at *3 (W.D.N.C. Feb. 1, 2021) ("[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." (quoting <u>Oppenheimer v. Episcopal Communicators, Inc.</u>, No. 1:19-CV-00282-MR, 2020 WL 4732238, at *2 (W.D.N.C. Aug. 14, 2020)).

In their brief, Defendants merely point out that the request dates back to March 2010, as if this is somehow *prima facia* evidence that the request is improper under Rule 26(b). However, Defendants ignore the undisputed fact that the North Carolina Department of Health and Human Services ("DHHS") conducted a regulatory survey on March 4, 2010, and cited Trails Carolina, LLC, for violating both N.C.G.S. § 1313E-256(G) HCPR – Notification, Allegations, & Protection and 10A NCAC 27D .0304 Client Rights – Harm, Abuse Neglect. [Doc. No. 30-16.] 10A NCAC 27D .0304, which requires Defendants to protect their "students" from harm, abuse, neglect and exploitation in accordance with N.C.G.S. 122(C)-66.[1] Moreover, N.C.G.S. § 1313E-256(G) requires Defendants to ensure that DHHS' Health Care Registry is notified of all allegations of

---

[1] N.C.G.S. 122(C)-66 specifically mandates reporting of abuse or neglect to either (i) the department of social services in the county where the facility serves the client; (ii) the district attorney in the district where the facility serves the client; or (iii) the appropriate local law enforcement agency in the city or county where the facility serves the client.

neglect against any health care personnel. Notably, these obligations are in addition to the universal mandatory reporting statute regarding abuse and neglect that the State of North Carolina adopted in N.C.G.S. 7B-301.

In response to the 2010 DHHS citation, Trails Carolina, LLC entered into a "Plan of Correction" with DHHS on April 7, 2010, in order to secure its license to operate its facility. In response to Trails Carolina, LLC's failure to comply with N.C.G.S. § 1313E-256(G), Trails Carolina, LLC assured DHHS that, going forward, "all allegations of abuse and neglect will be reported to the Health Care Registry." [Doc. 30-16, p. 9.] Likewise, in response to its violation of 10A NCAC 27D .0304, Trails Carolina, LLC stated that, following the survey, it reported the abuse and neglect to Transylvania County DSS and the DHHS's Health Care Registry. [Doc. 30-16, p. 27.] The Plan of Correction further states, "Trails has reviewed protocols for abuse reporting with all staff. A Quality Assurance committee has been formed and will meet quarterly to review trainings and Trails practices." [Id.]

In 2015, DHHS again cited Trails Carolina, LLC for violating 10A NCAC 27D .0304 Client Rights – Harm, Abuse Neglect. [Doc. No. 30-19.] DHHS concluded that Trails Carolina's violation was a repeated violation, i.e. a "Past Corrected" violation, pursuant to N.C.G.S. 122C-24.1 (2015), and DHHS issued Trails Carolina, LLC a $12,000 administrative penalty due to its violation of 10A NCAC 27D .0304. [Doc. 30-19, p. 20.] In its Plan of Correction dated March 23, 2015, Trails Carolina, LLC assured DHHS that "Precautionary Measures have been implemented to target more clearly and effectively expectations around student supervision." [Doc. 30-19, p. 1.]

Gertie contends, in part, that Derry O'Kane and the field staff who supervised her neglected her by failing to properly supervise Jane Doe and prevent her from assaulting Gertie despite actual knowledge and repeated reports of her improper contact and sexual activities with other "students,"

and then these employees neglected her further by failing to follow the mandatory reporting laws designed to protect her and other "students" from further abuse or neglect. Gertie contends this negligence is not a one-time coincidence due solely to the negligence of a rogue employee or group of employees; rather, Gertie contends that her harm is the proximate result of the culture of secrecy, non-reporting and non-compliance embraced by Trails Carolina, LLC and Wilderness Training & Consulting, LLC.

To that end, Request #4 – and the date range used in it – specifically targets Defendants' compliance with these Plans of Correction. Gertie intends to have an expert witness review Defendants' compliance with its Plan of Correction, N.C.G.S. § 1313E-256(G), 10A NCAC 27D .0304, N.C.G.S. 122(C)-66, and N.C.G.S. 7B-301, and the response to this request is foundational discovery for this purpose.

Gertie believes that the facts in this case will show Defendants never appropriately implemented these Plans of Corrections; Defendants merely protected Trails Carolina, LLC's license to operate by promising compliance to DHHS so Defendants could continue to profit. Gertie believes that Defendants systemically and repeatedly failed to implement these Plans of Corrections and failed to report allegations of neglect, including Gertie's, even after DHHS repeatedly cited Trails Carolina, LLC for its failure to comply with North Carolina's abuse and neglect laws.

Defendants' repeated failures to comply with its Plans of Correction and North Carolina's reporting laws is probative evidence into the corporate negligence of Trails Carolina, LLC, and Wilderness Training & Consulting, LLC; will illustrate the corporate ratification of negligence by Trails Carolina, LLC, and Wilderness Training & Consulting, LLC; and will demonstrate the level of wantonness required by N.C. Gen. Stat. § 1D-15. Gertie must be permitted to conduct discovery

into Trails Carolina's reporting practices following its Plans of Corrections. She needs these records to conduct deposition(s) of the Defendants, their regulators, Transylvania County DSS, and local law enforcement, and to provide a sufficient factual record for her expert(s) to use as a basis for their opinions.

There is simply no sufficient basis under Fed. R. Civ. P. Rule 26(b)(1) or (c) before this court upon which it can conclude that such discovery is disproportionate to the needs of this case or that would require a protective order. Therefore, Gertie respectfully asks that Defendants' Motion for Protective Order be denied and that Defendants be ordered to produce a complete response to Request #4 so that discovery can proceed in a timely manner.

### 2.     Request for Production #7 & 8:

Gertie's Request for Production #7 [**Ex. A** to this Motion] states as follows:

> Pursuant to Fed. R. Civ. P. Rules 26 and 34 (the "Rules"), [Gertie] hereby demands that each Defendant produce the following documents, electronically stored information, and tangible things to the extent that they are in each Defendant's possession, custody or control and as provided by the Rules:
> * * *
>
> *Request #7*: Each that contains or discusses any of the Defendants' protocols for abuse reporting and that were in effect at any time in 2016.

On May 28, 2024, Defendants provided the following Response [**Ex. B** to this Motion] and filed the instant Motion:

> **RESPONSE**: Defendant's Abuse Report Training is enclosed with the production of employee files. Defendants further submit that they will be submitting a Motion for Protective Order on the following policies responsive to this Request: Policy 3.06 Incident Reporting; Policy 6.12 Abuse Reporting Within Program; and Policy 6.13 Abuse Reporting – Occurrence Prior to Enrollment. Defendants will produce the aforementioned policies following the Court's decision on entry of a Protective Order. As discovery is ongoing, Defendants reserve the right to supplement this response.

Gertie's Request for Production #8 [**Ex. A** to this Motion] states as follows:

Pursuant to Fed. R. Civ. P. Rules 26 and 34 (the "Rules"), [Gertie] hereby demands that each Defendant produce the following documents, electronically stored information, and tangible things to the extent that they are in each Defendant's possession, custody or control and as provided by the Rules:

\* \* \*

**Request #8** Each that contains or discusses any of the Defendants' protocols that specifies the conditions under which searches and seizures of a "client" may occur and that were in effect at any time in 2016.

On May 28, 2024, Defendants provided the following Response [**Ex. B** to this Motion] and filed the instant Motion:

**RESPONSE**: Defendants will be submitting a Motion for Protective Order on the following policies responsive to this Request: Policy 4.07 Search and Seizure Policy. Defendants will produce the aforementioned policies following the Court's decision on entry of a Protective Order. As discovery is ongoing, Defendants reserve the right to supplement this response.

In their responses to Requests #7 and #8, Defendants do not even attempt to articulate an actual objection or state what possible basis could exist under Rule 26(c) for protecting these four policies as they were in effect 8 years ago. Defendants cannot cure their failure to timely raise a proper objection by adding two sentences of conclusory analysis in their Memorandum in support of the Motion. [Doc. 42, p. 8.] Defendants simply declare, with no supporting basis whatsoever, that four policies it adopted in 2016 are "confidential;" this conclusory statement falls far short of Defendants' burden under Rule 26, SCRCP per Ovando, Nallapaty, Jones, and Lively, *supra*.

Instead of doing anything to meet their burden of persuasion, Defendants simply take this opportunity in their Memorandum to disparage Gertie's undersigned counsel. [Doc. 42, p. 8.] However, as this court noted at the hearing on January 29, 2024, in *Clara Mann v. Trails Carolina, LLC*, 1:23-CV-00020, Trails Carolina, LLC **never moved for any protection** for any discovery production that Trails Carolina, LLC made in that case. Rather, the only motion for protection filed in that action was when Clara Mann moved for the entry of a QPO for the other student's records

- a motion that Trails Carolina, LLC opposed until it arrived at the hearing on Clara Mann's motion months later.

Trails Carolina, LLC certainly never obtained an order or an agreement in *Clara Mann v. Trails Carolina, LLC*, 1:23-CV-00020 establishing that the policies and procedures it produced in that action were "confidential." As Defendants do again here, Trails Carolina, LLC, simply tried to create "confidentiality" by fiat. Trails Carolina, LLC produced 160 pages of its policies and procedures in *Clara Mann v. Trails Carolina, LLC*, 1:23-CV-00020 **before** this Court entered the QPO in that case, and Trails Carolina, LLC's policies were not encompassed in the scope of that QPO. Rather, Trails Carolina simply used a .pdf tool to modify its business records by creating red "confidential" and "not for public dissemination" labels on the documents prior to producing them in that matter – a meaningless and somewhat deceptive act that did nothing to create a legal basis for protection under Rule 26(c). Defendants' implying that the undersigned has done anything inappropriate with documents that Trails Carolina, LLC and its counsel utterly failed to protect in any manner in *Clara Mann v. Trails Carolina, LLC*, 1:23-CV-00020 is sophistry.

Indeed, the Defendants' failure to take any action in *Clara Mann v. Trails Carolina, LLC*, 1:23-CV-00020, to protect any of its 160 pages of policies and procedures demonstrates precisely why the policies and procedures Gertie seeks are not subject to protection in this action. The current version of these policies is already in the possession of the undersigned. [Ex. C, D, E, & F to this Motion.] As these four policies demonstrate, each was revised in 2016 following Gertie's admission to Trails Carolina in May 2016. Therefore, Gertie needs to see the prior versions of the policy that were in effect during the period of her admission at Trails Carolina to measure Defendants' compliance with their own policies in effect at the time. Defendants have not articulated, and the undersigned cannot imagine, what could be "confidential" about out-of-date

policies and procedures used by a publicly regulated health care facility that has since lost its license and no longer operates at all.

Because Defendants have failed to meet their burden to establish any basis for this court to provide protection to the responsive policies and procedures Gertie seeks, she respectfully asks that Defendants' Motion for Protective Order be denied and that Defendants be ordered to produce a complete response to Request #4 so that discovery can proceed in a timely manner.

### 3. Request for Production #9:

Gertie's Request for Production #9 [**Ex. A** to this Motion] states as follows:

> Pursuant to Fed. R. Civ. P. Rules 26 and 34 (the "Rules"), [Gertie] hereby demands that each Defendant produce the following documents, electronically stored information, and tangible things to the extent that they are in each Defendant's possession, custody or control and as provided by the Rules:
>
> * * *
>
> ***Request #9***: Each that contains or discusses the minutes, conclusions, findings, or recommendations arising out of any of the Defendants' Quality Assurance Committee meetings between January 1, 2012 and December 31, 2016.

On May 28, 2024, Defendants provided the following Response [**Ex. B** to this Motion] and filed the instant Motion:

> **RESPONSE**: Objection. Defendants object on the basis that the term " Quality Assurance Committee meetings" is vague and undefined. Defendants further object to this request on the basis that it is overly broad, unduly burdensome, and not limited in time and scope to lead to the discovery of admissible evidence. Subject to and without waiving said objections, Defendant is not in possession of any documentation relating to Quality Assurance Committee meetings as they understand that term.

Defendants cannot sincerely suggest that they do not understand the meaning of the term "Quality Assurance Committee" used in Request #9. As quoted above, Trails Carolina, LLC's March 2010 Plan of Correction plainly states, "Trails has reviewed protocols for abuse reporting with all staff. A **<u>Quality Assurance committee</u>** has been formed and will meet quarterly to review

trainings and Trails practices." [Doc. 30-16, p. 27.] As noted above, Gertie Siegel contends that Defendants have systemically failed to comply with laws, regulations, and their own Plans of Corrections designed to prevent abuse and neglect. Request #9 is directly targeted to Gertie's contention, and Defendants have not even articulated, must less demonstrated, that Request #9 is disproportionate to the needs of this case.

Rather, Defendants have again asserted the boilerplate objection that echoes the pre-2015 standard of Rule 26(b)(1). For brevity, Gertie will not reiterate why Defendants' boilerplate objection is improper. Gertie simply incorporates her argument in Section B.1.b of this memorandum.

Likewise, Defendants have failed to present any affidavits or other evidence to meet their burden under Rule 26, SCRCP per <u>Ovando</u>, <u>Nallapaty</u>, <u>Jones</u>, and <u>Lively</u>, *supra*. Therefore, Gertie respectfully asks that Defendants' Motion for Protective Order be denied and that Defendants be ordered to provide a complete response to Request #9 so that discovery can proceed in a timely manner.

### 4.  Request for Production #13:

Gertie's Request for Production #13 [**Ex. A** to this Motion] states as follows:

Pursuant to Fed. R. Civ. P. Rules 26 and 34 (the "Rules"), [Gertie] hereby demands that each Defendant produce the following documents, electronically stored information, and tangible things to the extent that they are in each Defendant's possession, custody or control and as provided by the Rules:

* * *

***Request #13***: Each student-involved incident report between January 1, 2012 and December 31, 2016.

On May 28, 2024, Defendants provided the following Response [**Ex. B** to this Motion] and filed the instant Motion:

**RESPONSE**: Objection. Defendants object to this request on the basis that it is overly broad, unduly burdensome, and not limited in time and scope to lead to the discovery of admissible evidence. Defendants also object to the extent that this Request seeks the protected health information of minor enrollees at Trails Carolina. Defendants further submit that they will be submitting a Motion for Protective Order on the documentation sought by this Request.

As stated in section B.1.a of this memorandum, Gertie is not seeking any PHI that is outside of the QPO that the parties have now jointly sought. To the extent that Defendants have responsive documents that contain PHI that somehow falls outside of the Qualified Protective Order, Defendants should simply produce de-identified copies of those records, which are not subject to protection under HIPAA's Privacy Rule.

In its response, Defendants have again asserted the boilerplate objection that echoes the pre-2015 standard of Rule 26(b)(1). For brevity, Gertie will not reiterate why Defendants' boilerplate objection is improper. Rather, Gertie simply incorporates her argument in Section B.1.b of this memorandum.

Likewise, Defendants have relied on two conclusory sentences in their Memorandum to try and meet its burden of persuasion under Rule 26(c). Specifically, Defendants assert through counsel that they would face "an undue burden in gathering every incident report" and that the "vast majority of the incident reports would be wholly inapplicable to the allegations at issue in this litigation." However, Defendants have failed to present any affidavits or other evidence to meet their burden under Rule 26, SCRCP per <u>Ovando</u>, <u>Jones</u>, and <u>Lively</u>, *supra*, and the authorities cited in those decisions.

Defendants continue to try and redefine the "allegations at issue" in this litigation. Therefore, Gertie respectfully asks that this court keep in mind some of the "allegations at issue" when the court is considering what is "relevant" under Rule 26(b)(1) and the authorities interpreting it, e.g. In her Complaint, Gertie alleges:

50. Upon information and belief, Trails Carolina has spent years concealing incidents of physical neglect, child deprivation, injury, and sexual assault and battery between children from its regulators and the public, including Plaintiff and her family, for the deceptive purpose of lulling parents into a false sense of security when entrusting their children to Trails Carolina's exclusive custody and care.

51. Trails Carolina, by its corporate policies and practices, acts, failures, condonations and omissions, and O'Kane were directly responsible for, and created an environment that enabled Gertie's abuse and neglect, as well as the abuse and neglect of other girls who are too victimized and afraid to allow their voice to be publicly heard.

52. Rather, Trails Carolina attempts to mask events where children in its care are injured behind confidentiality agreements, and it fails to report events to the North Carolina Department of Health and Human Services, Trails Carolina, LLC's licensing regulator, even when faced with reasonable cause to suspect abuse or neglect has occurred in its program.

*** 

60. After a week of Gertie being at Trials Carolina, a student in Gertie's Trailblazer cohort referred to herein as "**Victim #1**" was sexually assaulted by a student referred to herein as "**Jane Doe**." Victim #1 disclosed the sexual assault to her cohort of girls and Trails Carolina's field staff.

61. Trails Carolina's field staff did not remove Jane Doe from Gertie's cohort, but instead took away all of the children's tent "privileges" and made all of the young women sleep in a line under a tarp instead, causing the children physical discomfort.

62. Around Gertie's second week at Trails Carolina, Victim #1 was again sexually assaulted by Jane Doe. Gertie and another child - who was later victimized by Jane Doe - disclosed the sexual assault to Trails Carolina's field staff, who were not the same staff as the previous week; these members of Trails Carolina's field staff disclosed Victim #1's sexual assault to O'Kane.

63. However, Despite having cause to suspect abuse and neglect and having reported it to O'Kane per Trails Carolina's policy, the Trails Carolina field staff did not report it to NCDSS or law enforcement.

64. Although Jane Doe was temporarily placed in a "burrito," she remained with Gertie's cohort of girls.

*** 

69. During Gertie's session with O'Kane, Gertie relayed Jane Doe made her nervous and discussed Victim #1's assault. O'Kane stated that Gertie was "mature"

enough to be a bigger person and urged her to befriend Jane Doe. O'Kane "challenged" Gertie to "do this for her."

***

75. Several weeks after the assault on Victim #1, Jane Doe sexually assaulted a student referred to herein as **Victim #2**. She disclosed the assault to Gertie and expressed the concern that Gertie would be next. This was said in the presence of Trails Carolina's field staff, who again, did not remove Jane Doe from the cohort. O'Kane was also informed, and no one reported the sexual assault to the regulatory authorities or law enforcement, much less the student's parents.

76. Approximately one week later, Jane Doe asked Gertie to run away. Gertie disclosed this to field staff and again stated Jane Doe was fixated on her, causing her to fear for her safety. Despite Gertie disclosing her worries to field staff, that very night she was placed to sleep next to Jane Doe in a Yurt.

77. That night, on or about Gertie's 37th day at Trails, Jane Doe raped Gertie. Jane Doe probed Gertie with her fingers and performed oral sex on Gertie without Gertie's consent.

***

83. While Gertie was at Trails Carolina, the water filters that the group used to drink water from a nearby stream broke. The filters were clogged and black, and the group was forced to filter water through a dirty bandana. It took Trails Carolina about three weeks to replace the filter. At that time, Gertie and other students became sick. Upon information and belief, some students developed pinworms, and despite never seeing a physician, Gertie was required to take medication in violation of N.C.G.S. § 122C-57.

84. Gertie was forced to hike all day – from taking down camp in the morning until it was time to set up for sleep. For the amount of calories expended due to the hiking, Gertie did not receive enough food despite her rights under N.C.G.S. § 122C-51.

85. Gertie was not provided a shower until her tenth day at Trails Carolina, where upon showering, she noticed she had already lost significant weight, which was due to inadequate caloric intake.

86. Due to the children's tent privileges being removed after the sexual assault of Victim #1, Gertie and the children in her cohort were forced to sleep outside in the rain, with her sleeping bag moving around the campsite with her in it, due to the force of the water.

87. Gertie also suffered symptoms of a urinary tract infection (UTI) for weeks

Page 18 of 21

before eventually being given a UTI test by staff. The test became bright purple, and Gertie, despite still not seeing a physician, was given antibiotics in violation of N.C.G.S. § 122C-57. The symptoms persisted after she finished the antibiotics, but she was not permitted to see a physician in violation of N.C.G.S. § 122C-57.

88. Gertie also had two staph infections on her arm during her time at Trails Carolina and was not taken to a physician for treatment; she was treated by unlicensed field staff instead. The infections left a scar that is still visible, although faded over the years

89. Despite her rights guaranteed under North Carolina Code 122C-62, Gertie was repeatedly told she could not call and consult with her parents while she was at Trails Carolina, nor was she provided appropriate structure, supervision and control.

90. Gertie's childhood sexual assault while she was in the custody of Trails Carolina and under the clinical care of O'Kane was the foreseeable result of the Defendants' negligent, reckless and wanton misconduct and corporate policy of non-compliance with industry standards or North Carolina law.

[Doc. No. 22, pp. 16-23.]

In summary, Gertie alleges that Defendants' institutionalized culture of non-compliance, systemic neglect, and non-reporting is evidenced by the fact that the children in its care, like Gertie, are consistently restrained in violation of North Carolina law; are deprived of proper medical care; suffer physically and sexual assault while in the Defendants' custody; are deprived of food, water and basic hygiene; are punished and deprived of basic necessities like tents while camping in the rain; and are denied lawful access to their parents. Gertie contends that Defendants practice is to not document these incidents as required by law and their own policies, and that when Defendants do document these types of occurrences, Defendants fail to report the neglect represented by these occurrences to regulators and law enforcement.

To that end, Gertie needs access to incident reports to illustrate the systemic nature of Defendants' misconduct, and she needs to be able provide these reports to her expert witness(es). This evidence is probative evidence into the corporate negligence of Trails Carolina, LLC, and

Wilderness Training & Consulting, LLC; will illustrate the corporate ratification of negligence by Trails Carolina, LLC, and Wilderness Training & Consulting, LLC; and will demonstrate the level of wantonness required by N.C. Gen. Stat. § 1D-15.

The incident reports are relevant under Rule 26(b), and Defendants have failed once more to present any affidavits or other evidence to meet their burden under Rule 26, SCRCP per <u>Ovando</u>, <u>Nallapaty</u>, <u>Jones</u>, and <u>Lively</u>, *supra*. Therefore, Gertie respectfully asks that Defendants' Motion for Protective Order be denied and that Defendants be ordered to provide a complete response to Request #13 so that discovery can proceed in a timely manner.

**5.    Request for Production #14:**

Gertie's Request for Production #13 [Ex. A to this Motion] states as follows:

> Pursuant to Fed. R. Civ. P. Rules 26 and 34 (the "Rules"), [Gertie] hereby demands that each Defendant produce the following documents, electronically stored information, and tangible things to the extent that they are in each Defendant's possession, custody or control and as provided by the Rules:
>
> * * *
>
> ***Request #14***: Each of the call logs and cell phone records showing calls to or from any person at or working with Foxtrot during Gertie's admission to Trails Carolina.

During the deposition of Jeremy Whitworth on May 28, 2024, Defendants provided the following Response [**Ex. B** to this Motion] and filed the instant Motion:

> **RESPONSE**: Objection. Defendants object to the extent that this Request seeks the protected health information of minor enrollees at Trails Carolina. Defendants further submit that they will be submitting a Motion for Protective Order on the documentation sought by this Request.

Since filing this Motion, Defendants have consented to the entry of the QPO Gertie asked this court to enter prior to Defendants' filing this Motion. [Doc. Nos. 40 & 45.] The documentation sought herein falls entirely within the QPO that the parties have asked that the Court enter. [Doc. No. 40-2.] To the extent the responsive documentation does not fall within that QPO, then as stated

in section B.1.a of this memorandum, Defendants should simply produce de-identified copies of those records, which are not subject to protection under HIPAA's Privacy Rule. There is no basis, however, for Defendants to continue to withhold these documents.

**C.    Conclusion**

For the reasons stated hereinabove, Gertie respectfully asks that Defendants' motion be denied in its entirety and award Gertie reasonable expenses, including attorneys' fees, in accordance with Fed. R. Civ. P. Rule 37(A)(5)(b).

Respectfully submitted:

s/Shaun C. Blake
Shaun C. Blake, Esq. (N.C. Bar #35819)
ROGERS LEWIS JACKSON & MANN, LLC
1901 Main Street, Suite 1200
Columbia, SC 29201
Tel: (803) 256-1268
Fax: 803-252-3653
Email: sblake@rogerslewis.com

ATTORNEYS FOR PLAINTIFF GERTRUDE A. SIEGEL

June 4, 2024