UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:24-CV-00046-MOC-WCM

| | |
|---|---|
| GERTRUDE A. SIEGEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| TRAILS CAROLINA, LLC, ) | |
| WILDERNESS TRAINING ) | |
| CONSULTING, LLC, and ) | |
| DERRY C. O'KANE, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on Defendants' motions to strike and dismiss. (Doc. Nos. 25, 27). Plaintiff opposes both motions. (Doc. Nos. 31, 32). Both motions are fully briefed and ripe for disposition. Both will be denied.

### I. BACKGROUND

In early May 2016, when Plaintiff was 12 years old, an unfamiliar man and woman forcibly removed Plaintiff from her home and transported her to Trails Carolina, a residential treatment center for troubled youth in Transylvania County, North Carolina. Plaintiff remained in Trails Carolina's custody for around 82 days. Plaintiff's complaint arises from events that transpired during that time.

Plaintiff pleads that Defendant Trails Carolina, LLC, is owned and managed by Defendant Wilderness Training and Consulting, LLC ("WTC"). WTC is an Oregon corporation

1

with citizenship in several other states and operates under the trade name Family Help & Wellness ("FHW"). Plaintiff alleges that "WTC is the sole owner and sole manager of Trails Carolina, LLC and completely controls and dominates its operations" such that "Trails Carolina, LLC has no independent identity of that of WTC." (Doc. No. 22 ¶¶ 15–16). Plaintiff alleges that Defendant Derry O'Kane was Plaintiff's primary therapist during her time at Trails Carolina.

Plaintiff claims that she was sexually assaulted by another minor in Trails Carolina's custody, causing Plaintiff to suffer "severe, life-long injuries." (Id. ¶ 4). She alleges that Defendant Trails Carolina failed to "screen and assess the children in its legal custody" and therefore created "an environment where troubled children . . . sexually assault other children within Trail[s] Carolina's custody and care." (Doc. No. 1 ¶ 6). Plaintiff further contends that Defendant Trails Carolina was a universal mandatory reporter under N.C. GEN. STAT. § 7B-301, but consistently failed to report abuse and neglect to the relevant authorities or take prompt action to protect the children in its custody. Moreover, Plaintiff alleges, Trails Carolina and its employees adopted policies contradicting North Carolina's mandatory reporting law. Plaintiff contends that Defendants knew or should have known that some of their charges sexually assaulted others but declined to report these incidents for fear of diminishing Defendants' profits. Plaintiff argues that her sexual assault was a foreseeable consequence of Defendants' non-compliance with industry standards and North Carolina mandatory reporting law. Based on these allegations—set forth in greater detail below—Plaintiff raises North Carolina state law tort claims against Defendants.

a. Factual Background

Within a week of Plaintiff's arrival at Trails Carolina, Plaintiff alleges that Jane Doe, another minor in Trails Carolina's custody, sexually assaulted a member ("Victim #1) of Plaintiff

2

and Doe's "cohort." Plaintiff avers that Victim #1 quickly disclosed the assault to Trails Carolina staff, but they took no action besides requiring the cohort to sleep under a tarp rather than inside a tent.

The next week, Plaintiff contends that Jane Doe sexually assaulted Victim #1 for a second time. Plaintiff and another member of her cohort again reported the assault to Trails Carolina staff. This time, the Trails Carolina staff—who were not the same staff-members as during Plaintiff's first week—escalated the report to Defendant O'Kane, but not North Carolina regulators or law enforcement. Trails Carolina responded to Plaintiff's report by wrapping Jane Doe in a tarp to immobilize her while other members of their cohort slept. Plaintiff also claims to have reported Jane Doe's assaults to her parents, who reached out to Defendant O'Kane. According to Plaintiff, Defendant O'Kane did not credit Plaintiff's reports. Indeed, Plaintiff further contends that after she discussed the assaults with Defendant O'Kane, O'Kane urged her to befriend Jane Doe.

In the weeks following Jane Doe's purported sexual assaults of Victim #1, Plaintiff avers that Jane Doe began to "fixate" on her. Specifically, Jane Doe told Plaintiff that Doe had been raped, attempted to self-harm in front of Plaintiff, and began giving Plaintiff sharp objects in the hopes she and Jane Doe would self-harm together. Jane Doe then sexually assaulted another member of their cohort ("Victim #2"). Afterwards, Plaintiff alleges, Jane Doe admitted she had assaulted Victim #2 and indicated that Plaintiff would be "next," all in the presence of Trails Carolina staff. The staff again reported the incident to Defendant O'Kane, but not to local regulators or law enforcement.

A week after Jane Doe assaulted Victim #2, Plaintiff alleges that Jane Doe asked her to run away. Despite reporting Doe's advances to Trails Carolina staff, Plaintiff claims she was

3

required to sleep next to Jane Doe. That night—after Jane Doe asked Plaintiff to run away—Plaintiff avers that Jane Doe digitally and orally penetrated her without consent.

The next day, Plaintiff disclosed the assault to Defendant O'Kane. Plaintiff claims that Defendant O'Kane made her promise not to tell anyone else about the assault and added that Plaintiff was partially at fault. Trails Carolina field staff only learned of the alleged assault when Victim #2 "started screaming" upon observing Plaintiff describe the assault in her journal. Plaintiff contends that Victim #2 was thereafter "removed from the group for 'manipulating people's beliefs.'" (Doc. No. 1 ¶ 49).

Plaintiff raises a smattering of factual allegations besides the sexual assault. First, Plaintiff claims that Defendants Trails Carolina and O'Kane failed to develop a treatment plan addressing the findings and recommendations of Elizabeth Schall, who evaluated Plaintiff roughly six weeks after her arrival at Trails Carolina. Next, Plaintiff contends that she and others in her cohort fell sick after being required to drink dirty water for several weeks, and that Plaintiff was required to take medication to treat her sickness despite not seeing a physician. Plaintiff also alleges that she was denied sufficient food during her treatment at Trails Carolina, and "lost significant weight" as a result. Plaintiff further claims that she suffered a urinary tract infection and two staph infections while at Trails Carolina but was never taken to a physician. Finally, Plaintiff avers that she was repeatedly told she could not call her parents and denied appropriate "structure, supervision[,] and control" in violation of N.C. GEN. STAT. § 122C-62. (Doc. No. 22 ¶ 89).

b. Procedural Background

Based on the foregoing factual allegations, Plaintiff brings two North Carolina state law negligence actions: one against Defendant Derry O'Kane, and the other against Defendants

Trails Carolina and WTC. Plaintiff's negligence claims invoke the common law doctrine of res ipsa loquitur. (Doc. No. 22 ¶ 25). Plaintiff further alleges that Defendants Trails Carolina and WTC are vicariously liable for the negligent, grossly negligent, and wanton acts and omissions of their employees which proximately caused Plaintiff's harm. (Id. ¶¶ 26–33). Plaintiff's original complaint also raised a claim against Defendants Trails Carolina and WTC under N.C. GEN. STAT. § 75-1.1 et seq., but that claim is absent from Plaintiff's Amended Complaint. See (Doc. No. 1 ¶¶ 84–86).

Defendants answered Plaintiff's initial complaint, see (Doc. Nos. 18, 20), but responded to Plaintiff's Amended Complaint (Doc. No. 22) with motions to strike (Doc. No. 25) and dismiss (Doc. No. 27). Plaintiff opposes both motions. (Doc. Nos. 31, 32). Defendants' motions are now ripe.

## II. STANDARD OF REVIEW

### a. Motion to Strike

Defendants' motion to strike is twofold. First, relying on FED. R. CIV. P. 15(a), Defendants contend that Plaintiff's entire Amended Complaint should be stricken as untimely. (Doc. No. 25 at 3). Second, Defendants argue in the alternative that certain passages of Plaintiff's Amended Complaint should be stricken under FED. R. CIV. P. 12(f) as "inflammatory," "derogatory," and "impermissible." (Id. at 4).

#### i. Rule 15(a): Timeliness

Rule 15(a)(1) of the Federal Rules of Civil Procedure permits a party to "amend its pleading once as a matter of law" within 21 days of service or, if the pleading requires a response, the earlier of either (1) 21 days after service of a responsive pleading, or (2) 21 days after service of a motion under FED. R. CIV. P. 12(b), (e), or (f). FED. R. CIV. P. 15(a)(1).

5

Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). The Court "should freely give leave" to amend "when justice so requires." Id.

### i. Rule 12(f): Materiality

Rule 12(f) of the Federal Rules of Civil Procedure permits the Court to strike "any redundant, immaterial, impertinent, or scandalous matter" from a filing. FED. R. CIV. P. 12(f). Because striking a pleading is a "drastic remedy," courts disfavor Rule 12(f) motions and grant them sparingly. United States v. Ancient Coin Collectors Guild, 899 F.3d 295, 325 (4th Cir. 2018) (quoting Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001)); see also Operating Engineers Loc. 324 Health Care Plan v. G & W Constr. Co., 783 F.3d 1045, 1050 (6th Cir. 2015) (citing Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953); Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977)); ACT, Inc. v. Worldwide Interactive Network, Inc., 46 F.4th 489, 499 (6th Cir. 2022); Stanbury L. Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977) (citing 5 Wright & Miller, Federal Practice and Procedure: Civil § 1380 at 783 (1969))). Nonetheless, the Court has broad discretion to strike pleadings under Rule 12(f). See Scherer v. Steel Creek Prop. Owners Ass'n, No. 1:13cv121, 2014 WL 813824, at *1 (W.D.N.C. Mar. 3, 2014); Xerox Corp. v. ImaTek, Inc., 220 F.R.D. 241, 243 (D. Md. 2003) (citing 5A Charles Alan Wright and Arthur R. Miller, § 1382 (1986)); Ins. Co. v. Cent. Mo. Elec. Coop., Inc., 278 F.3d 742, 748 (8th Cir. 2001) (citing BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007)). Ruling on a motion to strike, the Court views the relevant pleading in the light most favorable to its proponent. Clark v. Milam, 152 F.R.D. 66, 71 (S.D.W. Va. 1993).

For the purposes of Rule 12(f), a matter is "immaterial" if it "has no essential or important relationship to the claim for relief." CTH 1 Caregiver v. Owens, No. 8:11-2215-TMC, 2012 WL 2572044, at *5 (D.S.C. July 2, 2012) (quoting In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 402 F. Supp. 2d 434, 437 (S.D.N.Y. 2005)). A matter is "scandalous" if it "includes allegations that cast a cruelly derogatory light on a party to other persons." Id. But if the content at issue could have any possible bearing on the subject matter of the litigation, then a motion to strike that content should be denied. See Composite Res. v. Alphapointe Combat Med. Sys., LLC, No. 3:17-cv-00072-MOC-DSC, 2018 U.S. Dist. LEXIS 135943, at *4 (W.D.N.C. Aug. 10, 2018) (quoting Lane v. Endurance Am. Specialty Ins. Co., No. 3:10-CV-401-MOC-DCK, 2011 WL 1343201, at *4 (W.D.N.C. April 8, 2011)).

    b. **Motion to Dismiss**

Next, Defendants move to dismiss under FED. R. CIV. P. 12(b)(6) and 12(c). Assessing these motions, the Court "must draw all reasonable inferences arising from the [plaintiff's] proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59–60 (4th Cir. 1993).

A Rule 12(b)(6) motion tests whether the plaintiff "has stated a cognizable claim" and thereby challenges the "sufficiency of the complaint." Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 452 (4th Cir. 2012). In reviewing a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the Court must accept as true all factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). To survive a Rule 12(b)(6) motion, however, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its

7

face." Id. at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

Defendants also purport to seek dismissal under Rule 12(c), but a 12(c) motion may only be made "[a]fter the pleadings are closed." FED. R. CIV. P. 12(c). That is plainly not the case here. Regardless, a Rule 12(c) motion has the same standard of review as a 12(b)(6) motion, so the Court's denial of Defendants' 12(b)(6) motion suffices to dispose of Defendants' procedurally improper motion for judgment on the pleadings under Rule 12(c).

### III. DISCUSSION

#### a. Motion to Strike

Defendants contend that certain "allegations set forth in the Amended Complaint were made for the sole purpose of media consummation [sic] in continuation [sic] Plaintiff's attempt to litigate this action in the press." (Doc. No. 26 at 2). Defendants therefore move to strike Plaintiff's Amended Complaint under Rules 15(a) and 12(f) of the Federal Rules of Civil Procedure.

#### i. Rule 15(a): Timeliness

Defendants argue that Plaintiff's Amended Complaint should be stricken as untimely filed under FED. R. CIV. P. 15(a). (Doc. No. 26 at 3). Rule 15(a) permits a party to amend its pleading as a matter of law within 21 of service, or, if the pleading requires a response, the

8

earlier of either (1) 21 days after service of a responsive pleading, or (2) 21 days after service of a motion under FED. R. CIV. P. 12(b), (e), or (f). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Here, Plaintiff served her complaint on Defendants Trails Carolina and WTC on February 12, 2024, and against Defendant O'Kane on February 29, 2024. Defendants answered Plaintiff's complaint on March 6, and amended their Answer on March 30. Plaintiff then filed her amended complaint on March 28. Defendants contend that Plaintiff's Amended Complaint was untimely because it was filed more than 21 days after it was served upon Defendants. (Doc. No. 26 at 3). Plaintiff responds that, because the pleading in question (the original Complaint) required Defendants to respond, Rule 15(a)(1)(B) provides that the 21-day period runs from the date of service of the responsive pleading, i.e., Defendants' Amended Answer. (Doc. No. 32 at 2–3).

Plaintiff has the better of the argument. A complaint is a pleading that requires a response, so Rule 15(a)(1)(B) governs. Under that Rule, a party may amend its pleading as a matter of law within 21 days of service of a responsive pleading or a Rule 12(b) motion, whichever comes first. Even assuming the 21-day amendment period began when Defendants filed their initial Answer on March 6 (as opposed to their Amended Answer, filed March 30), Plaintiff's Amended Complaint was timely under Rule 15(a)(1)(B). See FED. R. CIV. P. 6(a)(1). And even if Plaintiff's amendment were untimely, this Court would haven leave to amend, since such leave is to be "freely" given "when justice so requires." FED. R. CIV. P. 15(a)(2).

For the foregoing reasons, Defendants' Rule 15(a) motion to strike will be denied.

### ii. Rule 12(f): Materiality

Next, Defendants argue that certain allegations in the amended complaint "amount to no more than irrelevant commentary by counsel for the Plaintiff injected for the sole purpose of

9

media coverage and inflammatory effect on a potential jury pool." (Doc. No. 26 at 4). Defendants assert that 26 paragraphs of Plaintiff's Amended Complaint should be stricken as immaterial to the litigation and prejudicial to Defendants. (Id. at 5-10). Defendants then identify another eight paragraphs, which Defendants argue are immaterial insofar as they pertain to non-parties. (Id. at 10-13).

Defendants object primarily to Plaintiff's reference to the North Carolina Department of Health and Human Services' March 2024 revocation of Trails Carolina's license to operate and Trails Carolina's subsequent closure. (Doc. No. 26 at 4). In support of their Rule 12(f) motion to strike, Defendants "submit[] that any reference to the current operating status of Trails Carolina is immaterial to the instant litigation, the events of which occurred in 2016." (Id. at 4–5).

To prevail on their Rule 12(f) motion, Defendants must satisfy a heavy burden. Taking the pleading complained of in the light most favorable to Plaintiff, see Clark, 152 F.R.D. at 71, Defendants must show that the allegations have "no essential or important relationship to the claim for relief." CTH 1 Caregiver, No. 8:11-2215-TMC, 2012 WL 2572044, at *5. Even if Defendants can show that Plaintiff's Amended Complaint includes "scandalous" allegations—that is, claims that "cast a cruelly derogatory light" on Defendants and others, id.—the Court will not strike those allegations if they could have any possible bearing on the subject matter of the litigation. See Lane, No. 3:10-CV-401-MOC-DCK, 2011 WL 1343201, at *4; Fed. Nat'l Mortg. Ass'n v. Cobb, 738 F. Supp. 1220, 1224 (N.D. Ind. 1990) (stating that "a court ordinarily will not strike a matter unless the court can confidently conclude that the portion of the pleading to which the motion is addressed is redundant or is both irrelevant to the subject matter of the litigation and prejudicial to the objecting party") (emphasis added); Goodman Distrib., Inc. v. Haaf, No. 4:10-CV-806 CAS, 2010 WL 4117379, at *10 (E.D. Mo. Oct. 19, 2010) ("A matter should not

10

be stricken unless it clearly can have no possible bearing on the subject matter of the litigation.... If there is any doubt whether the matter may raise an issue, the motion should be denied") (citations omitted); TriQuint Semiconductor, Inc. v. Avago Techs., Ltd., No. CV-09-01531-PHX-JAT, 2010 WL 3034880, at **3–4 (D. Ariz. Aug. 3, 2010).

Beyond Defendants' threadbare assertion that some of Plaintiff's allegations are immaterial and prejudicial, Defendants offer no support for their Rule 12(f) motion. Defendants bear the burden to show—by more than conclusory allegation—that the challenged claims have no possible bearing on the subject matter of this litigation. Plaintiff's response to Defendants' 12(f) motion demonstrates why Defendants cannot meet their burden: namely because Trails Carolina's closure after two children died in their custody is obviously relevant to at least the duty and breach elements of Plaintiff's negligence claims and the aggravating factors that could support an award of punitive damages. (Doc. No. 32 at 4–7, 9). As to the non-parties identified in Plaintiff's Amended Complaint, Plaintiff rightly notes that those allegations are relevant to this litigation because Plaintiff seeks to hold Defendants vicariously liable for certain non-Defendants' conduct, and because certain non-parties might be key witnesses in a potential trial. (Id. at 8). And Plaintiff's allegations regarding Defendant WTC's corporate structure (fragmentation, capitalization, etc.) are plainly relevant to a potential veil piercing analysis. (Id. at 11). Thus, Plaintiff convincingly shows that the challenged allegations are material to the litigation. Defendants' motion to strike will be denied.

### b. Motion to Dismiss

Defendants' motion to dismiss Plaintiff's Amended Complaint fares no better than Defendants' motion to strike. Defendants must shoulder a heavy burden to prevail on their motion to dismiss. Accepting as true all factual allegations in Plaintiff's Amended Complaint,

11

and drawing all reasonable inferences in Plaintiff's favor, Defendants must show that Plaintiff's Amended Complaint fails to state even a plausible claim for relief. This Defendants cannot do.

First, Defendants contend that Plaintiff's claims ought to be dismissed as time-barred. This argument is predicated on Defendants' characterization of Plaintiff's lawsuit as a medical malpractice action. (Doc. No. 28 at 3). Defendants may be correct that a North Carolina medical malpractice action that accrues when the Plaintiff is a minor must be filed before the Plaintiff's nineteenth birthday. (Id. (citing King by & through Small v. Albemarle Hosp. Auth., 370 N.C. 467, 471–72 (2018)). And Defendants are correct that, if this statute of limitations applied, then Plaintiff's Complaint (filed months after her nineteenth birthday) would be untimely.

But even if Defendants are correct that this is a medical malpractice case, it is also surely a "claim[] related to sexual abuse suffered while the plaintiff was under 18 years of age." N.C. GEN. STAT. § 1-17(d); see News & Observer Publ'g Co. v. Easley, 641 S.E.2d 698, 704 (N.C. Ct. App. 2007) (giving the phrase "relating to" its ordinary meaning). And in 2019, when the North Carolina General Assembly unanimously adopted the SAFE Child Act, the legislature extended the statute of limitations for all such claims to the plaintiff's twenty-eighth birthday. (Id.); Cohane v. Home Missioners of Am., 892 S.E.2d 229, 230 (N.C. Ct. App. 2023). There is no question that Plaintiff filed this action within the statute of limitations applicable under the SAFE Child Act. Therefore, Defendants' motion to dismiss Plaintiff's claims—which, malpractice or otherwise, are plainly related to childhood sexual abuse—as time-barred must fail.

In the alternative to their statute of limitations argument, Defendants assert that Plaintiff "does not have standing to seek medical expenses incurred during minority." (Doc. No. 28 at 4). More specifically, Defendants maintain that Plaintiff cannot recover for medical expenses incurred during her minority, since the right of action to recover such expenses is vested in

12

Plaintiff's parents or guardians instead of Plaintiff herself. (Id.) (citing Vaughan v. Moore, 89 N.C. App. 566, 567 (1988)). But even if Defendants are correct on the law, Plaintiff could still plausibly recover "for pain and suffering and impairment of future earning capacity" on the same facts. See Vaughan, 89 N.C. App. at 568 (citing Ellington v. Bradford, 242 N.C. 159, 160 (1955)). And Plaintiff correctly points out that Defendants' Rule 12(b)(6) motion is not a surgical instrument capable of cabining Plaintiff's theory of damages, but instead a blunt tool that functions only to dismiss a claim entirely. (Doc. No. 31 at 5). Put another way, even if Defendants are correct that Plaintiff seeks an improper remedy, such impropriety is not fatal to Plaintiff's Amended Complaint since Plaintiff is plausibly entitled to "relief of some other type," i.e., for pain and suffering and impairment of future earning capacity. See Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C., 635 F.3d 1106, 1108 (8th Cir. 2011). Therefore, Defendants' motion to dismiss will be denied in its entirety.

## IV. CONCLUSION

For the foregoing reasons Defendants' motions to strike and dismiss will be denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' motions to strike (Doc. No. 25) and to dismiss (Doc. No. 27) are **DENIED**.

Signed: August 5, 2024

Max O. Cogburn Jr.
United States District Judge

13

Case 1:24-cv-00046-MOC-SCR    Document 49    Filed 08/05/24    Page 13 of 13